EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Corali López Castro<br><br>    Peticionaria<br><br>        v.<br><br>Atlantic southern Insurance Company<br><br>    Recurrida | Certiorari<br><br>2003 TSPR 12<br><br>158 DPR \_\_\_\_ |

Número del Caso: CC-2001-1039


Fecha: 11 de febrero de 2003


Tribunal de Circuito de Apelaciones:
                        Circuito Regional IV


Juez Ponente:
                Hon. Roberto L. Córdova Arone



Abogado de la Parte Peticionaria:

                        Lcdo. Luis Roberto Santos
                        Lcda. Myrta Estrella Nieves Blas

Abogados de la Parte Recurrida:

                        Lcdo. Guillermo A. Nigaglioni
                        Lcda. Olga Isabel Nigaglioni Cruz


Materia: Reclamación Póliza de Seguro



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Corali López Castro

    Demandante-peticionaria

       vs.               CC-2001-1039      **CERTIORARI**

Atlantic Southern Insurance
Company

    Demandada-recurrida

**OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**

San Juan, Puerto Rico, a 11 de febrero de 2003

El 15 de marzo de 1975 el Ingeniero Fidel Pino Cros adquirió una póliza de seguros de vida de la compañía Manufacturers Life Insurance Company.[1] La única beneficiaria designada bajo dicha póliza era su esposa, y peticionaria en el caso hoy ante nuestra consideración, Corali López Castro.

La póliza adquirida por Pino era una de término nivelado bajo un plan denominado como: "Convertible But Not Renewable Term with Nonforfeiture Benefits Non-Participating". De

---

[1] En 1994 Manufacturers se retiró del mercado de seguros en Puerto Rico y Atlantic Southern Insurance Company (ASICO) asumió una porción de su cartera de activos.

acuerdo con este plan, la póliza podía convertirse en otro tipo de póliza dentro de ciertos períodos de conversión especificados en el contrato de seguro. El asegurado nunca solicitó la conversión de la póliza, por lo cual la misma quedó inalterada.

La póliza expiraba el 15 de marzo de 1998, fecha en que el asegurado cumplía los 65 años de edad. El señor Pino Cros se acogió a un sistema mediante el cual mensualmente se debitaba de su cuenta bancaria corriente, el monto de la prima por dicha póliza. A pesar de que la referida póliza expiró, por sus propios términos, el 15 de marzo de 1998, ASICO continuó, por error, descontando mensualmente de la cuenta bancaria una cantidad igual a la que se cobraba por la prima de la póliza.

**El señor Pino falleció el 22 de agosto de 1999, a los 66 años de edad. La señora López sometió a ASICO su reclamación por la muerte de éste el 27 de septiembre de 1999. ASICO denegó los beneficios solicitados debido a que la póliza estaba vencida desde el 15 de marzo de 1998. En ese momento, ASICO se percató del error en el que había incurrido al haber cobrado primas de la cuenta bancaria luego de la fecha de expiración de la póliza. Ese mismo día la aseguradora notificó al banco que descontinuara los débitos de la cuenta bancaria corriente antes mencionada.**

**Las sumas debitadas de la cuenta corriente de la beneficiaria, con posterioridad a la expiración de la póliza, fueron a parar a las arcas de ASICO por el período**

**comprendido entre el 15 de marzo de 1998, cuando la póliza expiró, y el 27 de septiembre de 1999, fecha en que ASICO recibió la reclamación de la señora López y el aviso de defunción del señor Pino.**

El 4 de noviembre de 1999, la señora López recibió una carta de ASICO en la cual ésta le informó que la póliza había expirado el 15 de marzo de 1998 y que, por error involuntario, los pagos automáticos que se efectuaban para el pago de la prima continuaron hasta el mes de septiembre de 1999. Conjuntamente con dicha carta, ASICO le envió un cheque por la suma de $4,007.00, por concepto de la devolución de las primas cobradas luego de la terminación del contrato de seguro, incluyendo los intereses correspondientes. La señora López no aceptó el cheque, devolviéndolo.

Así las cosas, el 24 de noviembre de 1999 la señora López presentó una demanda ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, reclamando el pago de la póliza. Adujo que las actuaciones de la aseguradora, al continuar cobrando las primas, crearon en ella la expectativa de que la póliza de seguro continuaba en vigor y que la aseguradora había renunciado a la cláusula sobre la fecha de expiración de la póliza.

Luego de varios incidentes procesales, la señora López presentó una moción de sentencia sumaria. Adujo que la actuación de la aseguradora al continuar cobrando primas, luego del vencimiento de la póliza, constituyó una

renuncia al término de caducidad de la póliza en virtud de lo resuelto por este Tribunal en Rosario v. Atlantic Southern Insurance Company, 95 D.P.R. 759 (1968). ASICO se opuso a la misma, alegando que dicho caso no era de aplicación a la controversia. Argumentó que la póliza en el caso de autos venció, por sus propios términos, el 15 de marzo de 1998 y que el pago de primas, posterior a tal fecha, no podía extender o restablecer el contrato vencido. Así las cosas, el foro de instancia dictó sentencia a favor de la demandante-peticionaria. Aplicando las doctrinas de "waiver" y "estoppel" y el caso de Rosario v. Atlantic Southern Insurance Company, ante, resolvió que la póliza estaba vigente ya que ASICO, al continuar cobrando las primas con posterioridad al vencimiento de la póliza, creó en la señora López la expectativa de que la póliza continuaba en vigor.

Inconforme con tal dictamen ASICO acudió, oportunamente, en apelación al Tribunal de Circuito de Apelaciones. La parte apelada se opuso. Por sentencia del 23 de octubre de 2001 el foro apelativo intermedio revocó la sentencia apelada. Resolvió que las doctrinas de "waiver" y "estoppel", según esbozadas en Rosario v. Atlantic Southern Insurance Company, ante, no eran de aplicación al caso ya que la póliza tenía término específico de vencimiento el cual surgía de forma clara y expresa del lenguaje del contrato; aparte de que dichas

doctrinas no podían utilizarse para expandir la cobertura de la póliza.

Luego de varios incidentes procesales, la peticionaria López Castro, inconforme con la actuación del tribunal apelativo intermedio, acudió oportunamente --vía certiorari-- ante este Tribunal. Alega que procede revocar la sentencia emitida por el tribunal apelativo debido a que dicho foro judicial incidió al:

...**dictaminar que la doctrina de "waiver" y "estoppel" no son de aplicación al presente caso.**

...**dictaminar que el cobrar por error la prima posterior a la alegada expiración de la póliza no constituye una renuncia a la fecha de expiración y tampoco creó una expectativa a la peticionaria aquí compareciente de que la póliza continuaba en vigor.**

...**revocar la sentencia dictada por el Honorable Tribunal de Primera Instancia.**

El 15 de febrero de 2002, mediante Resolución a tales efectos, le concedimos a la demandada-recurrida un término de veinte (20) días para mostrar causa por la cual este Tribunal no debía expedir el recurso solicitado y dictar sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones. Contando con la comparecencia de

ambas partes y estando en posición de resolver el recurso radicado, procedemos a así hacerlo. Confirmamos.


I

En materia de seguros, hemos establecido que la relación entre una aseguradora y su asegurado es de naturaleza contractual y se rige por lo pactado en el contrato de seguro. El contrato constituye la ley entre las partes. General Accident Insurance Company of P.R. Ltd. v. Ramos Díaz, res. el 14 de junio de 1999, 99 TSPR 91; Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996); Torres v. E.L.A., 130 D.P.R. 640 (1992).

El Código de Seguros de Puerto Rico dispone que: "Todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherida a la póliza y que forme parte de ésta.". Artículo 11.250 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1125; Meléndez Piñero v. Levitt & Sons of Puerto Rico, Inc., 129 D.P.R. 521, 554 (1991).

Los contratos de seguro, por ser considerados contratos de adhesión[2], deben interpretarse liberalmente a favor del asegurado, con el objetivo de sostener la

---

[2] **Un contrato de adhesión es aquél en que una sola de las partes dicta las condiciones del contrato, condiciones que ha de aceptar la otra parte contratante. Zequeira v. C.R.U.V., 83 D.P.R. 878 (1961). Véase además Maryland Casualty Company v. San Juan Racing Ass'n Inc., 83 D.P.R. 559 (1961).**

cubierta por vía de una interpretación razonable. Quiñones López v. Manzano Pozas, ante; A.A.A. v. Librotex, Inc., 141 D.P.R. 375 (1996); Rosario Barreras v. Santana, 87 D.P.R. 227 (1963); Aparicio Bosch v. Asociación de Maestros de Puerto Rico, 73 D.P.R. 596 (1952).

No obstante, esta norma no tiene el efecto de obligar a los tribunales a interpretar a favor del asegurado una cláusula que claramente le da la razón al asegurador cuando su significado y alcance sea claro y libre de ambigüedad. Quiñones López v. Manzano Pozas, ante a la pág. 155; A.A.A. v. Librotex Inc., ante a las págs. 380-81; González Burgos v. Cooperativa de Seguros de Vida de Puerto Rico, 117 D.P.R. 645 (1986); Casanova Díaz v. Puerto Rican- American Ins. Co., 106 D.P.R. 689 (1978). En tales situaciones, la cláusula debe considerarse obligatoria para el asegurado. Quiñones López v. Manzano Pozas, ante.; Martínez Pérez v. U.C.B., 143 D.P.R. 554 (1997).

Deben mantenerse presente, además, las disposiciones del Artículo 1233 del Código Civil que ordena que, cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus términos. 31 L.P.R.A. sec. 3471. Como hemos expresado en otras ocasiones, el Código Civil es fuente de derecho supletorio al interpretar correctamente un contrato de seguro. Banco de la Vivienda

de Puerto Rico v. Pagán Insurance Underwriters, Inc., 111
D.P.R. 1 (1981).

En síntesis, cuando los términos y condiciones de un
contrato de seguro, que constituye la ley entre las
partes, sean claros, específicos y no den margen a
ambigüedades o diferentes interpretaciones deben hacerse
valer los mismos según la voluntad de las partes. En
ausencia de ambigüedad, las cláusulas del contrato obligan
a los contratantes. Quiñones López v. Manzano Pozas, ante
a la pág. 156.

II

En el presente caso nos toca resolver si el acto de
una aseguradora de continuar cobrando primas *por error,*
con posterioridad a la fecha de vencimiento de una póliza
de vida de término fijo, constituye una renuncia o
"waiver" de la fecha de expiración de la misma, a los
efectos de reconocerle vigor a ésta luego de su
vencimiento.[3]

---

[3] **La peticionaria en el caso de autos presentó en etapa apelativa ciertos documentos que <u>no</u> fueron planteados ante el foro de instancia. En vista de tal proceder, la recurrida, en su "Memorando en Oposición a que se Expida el Auto de Certiorari" y en su "Escrito en Cumplimiento de Orden para Mostrar Causa", nos solicita que excluyamos y no consideremos los mismos en nuestro análisis.**

**Encontrándonos impedidos en etapa de revisión de pasar juicio sobre cuestiones no presentadas ni atendidas por el Tribunal de Primera Instancia, los referidos documentos de la peticionaria no serán considerados al disponer del presente caso. Trabal Morales v. Ruiz Rodríguez, 125 D.P.R. 340 (1990); Sánchez v. Eastern Air Lines Inc., 114 D.P.R.691 (1983); Santiago Cruz v.**

Las doctrinas de "waiver" (renuncia) y "estoppel" (impedimento), las cuales permean todo el derecho, son de especial aplicación en el campo de los seguros debido a la naturaleza de adhesión de estos contratos. Rosario v. Atlantic Southern Insurance Company, ante; W. Vance, Vance On Insurance, 3ra ed., sec. 81, pág. 471 (1951). Los tratadistas en materia de seguros han definido "waiver" como el abandono intencional o cesión voluntaria de un derecho o privilegio conocido. 16B Appleman, Insurance Law and Practice, sec. 9090, págs. 489 y 491 (1981); Vance On Insurance, ante a la pág. 470; 6 Holmes' Appleman on Insurance,2d., sec. 43.1, pág.670 (1998); 6 Couch on Insurance,2d., sec. 32:274, pág.587 (1985). La doctrina de renuncia, o "waiver", es una que envuelve intención por parte de la aseguradora de abandonar un derecho, como sería el de invocar la suspensión o caducidad del contrato de seguro por el incumplimiento de una de sus disposiciones. 6 Holmes' Appleman on Insurance, 2d., ante a las págs. 670-71.

Por otro lado, la doctrina de "estoppel", o impedimento, se ha definido como la abolición de derechos y privilegios de la aseguradora cuando fuera contrario a la equidad permitir su afirmación. 16B Appleman, Insurance Law and Practice, ante. Esta doctrina requiere demostrar que una de las partes en la transacción ha confiado en la

---

**Hernández Andino**, 91 D.P.R. 709 (1965);**Autoridad de Hogares v. Sagastivelza**, 71 D.P.R. 436; **Murcelo v. HI Hettinger & Co.**, 92 D.P.R. 411 (1965).

apariencia creada por la otra y que resultaría en detrimento para la primera permitir que la segunda renuncie a los efectos de la apariencia creada. 6 Couch on Insurance 2d., sec. 32:270, pág. 583.

En materia de seguros, el ordenamiento jurídico ha establecido que estas doctrinas se extienden prácticamente a cualquier situación en la cual la aseguradora niegue responsabilidad o "liability". 9 Holmes' Appleman on Insurance, 2d., sec. 57.15, págs. 416-17 (1999); 44 Am Jur 2d, Insurance, sec. 1574 (1982). Las doctrinas de "waiver" y "estoppel" se han utilizado en diversas situaciones para demostrar que las aseguradoras han renunciado a términos y condiciones estipuladas por ellas en los contratos de seguros. 9 Holmes'Appleman On Insurance, 2d., sec. 57.5, págs. 387-88; 44 Am Jur 2d, Insurance, secs. 1571 y 1574 (1982).

No sólo se han extendido estas doctrinas a condiciones y cláusulas específicas del contrato de seguro sino también a actos, costumbres y conducta realizada por la aseguradora y sus agentes. 5 Holmes' Appleman on Insurance, 2d., sec. 28.3, págs. 327-37 (1998). Así, las condiciones relativas a la caducidad y suspensión de las pólizas pueden ser entendidas renunciadas por las aseguradoras en virtud de estas doctrinas, a través de sus actos o los de sus agentes. Esto impide que posteriormente las aseguradoras puedan levantar dichas condiciones contra

el asegurado. Id. a las págs. 333-37; <u>Rosario</u> v. <u>Atlantic Southern Insurance Company</u>, 95 D.P.R. 759, 766 (1968).

Si bien las doctrinas de "waiver" y "estoppel" aplican ampliamente en el campo de los seguros, <u>es norma conocida y reiterada que las mismas no se pueden utilizar para extender o ampliar la cubierta y el alcance de una póliza de seguro</u>. Véase: <u>Jones</u> v. <u>Jackson National Life Insurance Co.</u>, 27 F.3d 566 (6<sup>to.</sup> Cir. 1994); <u>Reliance Insurance Company</u> v. <u>Escapade</u>, 280 F.2d 482, 487 (5<sup>to.</sup> Cir. 1960); <u>Peters</u> v. <u>Great American Ins. Co.</u>, 177 F.2d 773, 778-79 (5<sup>to.</sup> Cir. 1949); <u>Randolph</u> v. <u>Fireman's Fund Insurance Company</u>, 124 N.W.2d 528, 531-32 (Iowa 1963); <u>Great American Reserve Insurance Company</u> v. <u>Mitchell</u>, 335 S.W.2d 707, 708 (Tex.Civ.App. 1960); <u>Jackson</u> v. <u>Farmers Union Mutual Insurance Company</u>, 306 S.W.2d 693, 695 (Ark.1957); <u>Hunter</u> v. <u>Jefferson Standard Life Insurance Company</u>, 86 S.E.2d 78, 80-81 (N.C. 1955); <u>Richardson</u> v. <u>Iowa State Traveling Men's Ass'n</u>, 291 N.W. 408, 412 (Iowa 1940); <u>Quillian</u> v. <u>Equitable Life Assurance Society of the U.S.</u>, 6 S.E.2d 108, 111 (Ga.App. 1939); <u>Pierce</u> v. <u>Homesteaders Life Ass'n</u>, 272 N.W. 543, 545-46 (Iowa 1937); <u>Prudential Ins. Co. of America</u> v. <u>Brookman</u>, 175 A. 838, 840 (Md.App. 1934); <u>Home Ins. Co. of New York</u> v. <u>Campbell Motor Co.</u>, 150 So. 486, 489 (Ala. 1933); <u>Ruddock</u> v. <u>Detroit Life Ins. Co.</u>, 177 N.W. 242, 248 (Mich. 1920); <u>McCoy</u> v. <u>Northwestern Mutual Relief Ass'n</u>, 66 N.W. 697, 699 (Wis. 1896).

Este Tribunal en <u>García Curbelo</u> v. <u>A.F.F.</u>, 127 D.P.R. 747 (1991), citando con aprobación a 16B <u>Appleman, Insurance Law and Practice</u>, sec. 9090 (1981), señaló que:

> "<u>Insurance contracts cannot be created by estoppel</u>. That doctrine cannot be invoked by an insured to create a primary liability of the insurer for which all elements of binding contract are necessary ... <u>It has been repeatedly held that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability</u>, but may only affect rights reserved therein ... <u>[U]nder no conditions can coverage be extended by waiver or estoppel</u> ... While a forfeiture of benefits contracted for an insurance policy may be waived, the doctrine of waiver or estoppel cannot create a liability for benefits not contracted for. Nor may a contract, under the guise waiver, be reformed to create a liability for a condition specifically excluded by the specific terms of the policy." Id. a las págs. 758-59. (Énfasis nuestro.)[4]

Al así resolver, <u>coincidimos y/o adoptamos en nuestra jurisdicción la norma mayoritaria vigente en la jurisdicción norteamericana</u>. En dicha jurisdicción, los tribunales <u>han distinguido entre condiciones que provocan la suspensión o caducidad de las pólizas</u>,[5] las cuales

---

[4] **Véase, 9 <u>Holmes'Appleman on Insurance 2d.</u>, sec. 57.15 págs. 413-418; 16B <u>Appleman, Insurance Law and Practice</u>,sec.9083; 1 <u>A.L.R.3d</u> 1139 secs. 2-3; 113 <u>A.L.R.</u> 857-60; 43 <u>Am Jur 2d, Insurance</u>, secs. 465-66 (1982); 44 <u>Am Jur 2d, Insurance</u>, sec. 1577 (1982).**

[5] **Un ejemplo de una condición establecida en un contrato de seguro que puede provocar la caducidad o suspensión de la póliza y que puede ser renunciada bajo la doctrina de "waiver" y "estoppel" por las compañías aseguradoras lo es la cláusula de caducidad por falta de pago de primas. Esa renuncia ocurre cuando luego de vencido el plazo establecido en la póliza para realizar dichos pagos periódicos, la aseguradora los recibe, acepta o retiene. 5 <u>Holmes' Appleman on Insurance 2d</u>, sec. 28.3, págs. 333-37**

pueden ser renunciadas bajo las doctrinas de "waiver" y "estoppel"; y las condiciones o cláusulas dirigidas a la cubierta o alcance de la póliza, las cuales no pueden ser renunciadas bajo estas doctrinas por meros actos o conducta implícita sin que haya mediado acuerdo expreso. 1 A.L.R.3d 1139 sec. 1; 113 A.L.R. 857-71; 43 Am Jur 2d, Insurance, sec. 465, págs. 529-30.[6]

Con relación a este particular, en Reliance Insurance Company v. Escapade, ante a la pág. 487, el Tribunal de Apelaciones para el Quinto Circuito se expresó de la siguiente manera:

---

y sec. 29.1, págs. 416-22 (1998); 6 Couch on Insurance 2d, secs. 32:335-36, págs. 645-52 (1985) (citando con aprobación jurisprudencia estatal); 44 Am Jur 2d, Insurance, sec. 1574, pág. 584; secs. 1647-48, págs. 644-47 y sec. 1652, pág. 650; Rosario v. Atlantic Southern Insurance Company, 95 D.P.R. 759 (1968).

[6] Véase, Jones v. Jackson National Life Insurance Co., 27 F.3d 566 (6to. Cir. 1994); Reliance Insurance Company v. Escapade, 280 F.2d 482 (5to. Cir. 1960); Peters v. Great American Ins. Co., 177 F.2d 773 (5to. Cir. 1949); Bankers Life Co. v. Sone, 86 F.2d 780 (5to. Cir. 1936); Randolph v. Fireman's Fund Insurance Company, 124 N.W.2d 528 (Iowa 1963); Great American Reserve Insurance Company v. Mitchell, 335 S.W.2d 707 (Tex.Civ.App. 1960); Jackson v. Farmers Union Mutual Insurance Company, 306 S.W. 2d 693 (Ark.1957); Hunter v. Jefferson Standard Life Insurance Company, 86 S.E. 2d 78 (N.C. 1955); Richardson v. Iowa State Traveling Men's Ass'n, 291 N.W. 408 (Iowa 1940); Pierce v. Homesteaders Life Ass'n, 272 N.W. 543 (Iowa 1937); McCabe v. Maryland Casualty Co., 183 S.E. 743 (N.C. 1936); Prudential Ins. Co. of America v. Brookman, 175 A. 838 (Md.App. 1934); Conner v. Union Auto Insurance Co., 9 P.2d 863 (Cal. App. 1932); Home Ins. Co. of New York v. Campbell Motor Co., 150 So. 486 (Ala. 1933); Rosenberg v. General Accident Fire & Life Assur. Co., 246 S.W. 1009 (Mo. 1923); Ruddock v. Detroit Life Ins. Co., 177 N.W. 242 (Mich. 1920); McCoy v. Northwestern Mutual Relief Ass'n, 66 N.W. 697 (Wis. 1896).

"It is well settled that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action. The rule is that while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage or restrictions on the coverage cannot be extended by the doctrine of waiver or estoppel" (Énfasis nuestro.)[7]

Al amparo de estas normas, un número considerable de estados han decidido que aceptar primas, luego de vencida una póliza, no constituye una renuncia o "waiver" de la cláusula que dispone sobre la terminación de la póliza. Ello debido a que dicha cláusula es una condición dirigida a la cobertura y alcance de la póliza y como tal, no puede ser extendida en virtud de estas doctrinas.[8]

En Great American Reserve Insurance Co. v. Mitchell, ante, la aseguradora expidió una póliza de seguros de vida

---

[7] **"This position is strongly favored since to extend coverage through the use of the doctrine of waiver or estoppel will essentially rewrite the contract into by the parties. Thus, the doctrines should only be used to remove the insurer's ability to rely on certain exclusions, limitations or conditions but not to add new insuring agreements to the policy." 9 Holmes' Appleman on Insurance 2d., sec. 57.5, pág. 389 (1999).**

[8] Véase, Troutman v. Nationwide Mutual Insurance Company, 400 S.W.2d 215 (Ky.App. 1966); Munro v. Boston Insurance Co., 122 N.W.2d 654 (Mich. 1963); Great American Reserve Insurance Company v. Mitchell, 335 S.W.2d 707(Tex.Civ.App. 1960); Jackson v. Farmers Union Mutual Insurance Company, 306 S.W.2d 693 (Ark.1957); Hunter v. Jefferson Standard Life Insurance Company,86 S.E.2d 78 (N.C. 1955); Pierce v. Homesteaders Life Ass'n, 272 N.W. 543 (Iowa 1937); McCabe v. Maryland Casualty Co., 183 S.E. 743 (N.C. 1936); Prudential Ins. Co. of America v. Brookman, 175 A. 838 (Md.App. 1934); Reid v. Missouri State Life Ins. Co., 24 S.W.2d 1086 (Mo.App. 1930); Ruddock v. Detroit Life Ins. Co., 177 N.W. 242 (Mich. 1920).

a los empleados de la ciudad de Dallas. La póliza expresamente disponía que la cubierta expiraría en el momento en que los empleados cumplieran los 65 años de edad. El asegurado en controversia tenía 62 años cuando la póliza entró en vigor. Durante ocho meses posterior a la fecha de terminación de la póliza, el patrono, por error, cobró las primas y las envió a la aseguradora. Al fallecer el asegurado, su esposa y beneficiaria de la póliza reclamó el pago de la misma. La aseguradora le informó que la póliza había expirado y le devolvió el dinero por las primas cobradas erróneamente. El Tribunal Apelativo de Texas resolvió que la póliza expiró cuando el esposo cumplió los 65 años de edad, es decir, a la fecha de expiración establecida en la póliza. Dictaminó que reconocerle vigencia a la póliza luego de tal fecha implicaría cambiar, rescribir o extender los riesgos cubiertos por la póliza.

Del mismo modo, en Hunter v. Jefferson Standard Life Insurance, ante, el Tribunal Supremo de Carolina del Norte adoptó esa norma. La controversia giraba en torno a una póliza de incapacidad total y permanente que tenía una fecha de expiración específica y expresada en la póliza. La aseguradora, por error, estuvo cobrando primas al asegurado por un intervalo de cuatro años luego de la fecha de expiración de la póliza. El Tribunal determinó que dicha actuación no constituyó una renuncia a la fecha de expiración de dicha póliza toda vez que las doctrinas

de "waiver" y "estoppel" no pueden utilizarse para extender la cubierta y alcance de las pólizas. Decidió, además, que el asegurado sólo tenía derecho a recuperar las primas pagadas luego de la fecha de terminación de la póliza.

Así también en, Pierce v. Homesteaders Life Ass'n, ante, la póliza indicaba expresamente que la misma expiraría cuando el asegurado cumpliera los 60 años de edad. El asegurado murió días después de haber cumplido dicha edad. La aseguradora aceptó el pago de primas por un período posterior a la fecha de expiración establecida. Los beneficiarios alegaron que al actuar de esta manera la aseguradora renunció a la fecha de expiración y no podía negarse a reconocerle vigor a la póliza por el período de tiempo que aceptó primas luego de expirada la misma. El Tribunal Supremo de Iowa apoyó su dictamen, denegatorio de los beneficios, en que las doctrinas de "waiver" y "estoppel" no podían invocarse para crear responsabilidad por beneficios no contratados. Determinó que como el contrato de seguro en ese caso fijaba expresamente la expiración de la póliza a un término específico, tales doctrinas no podían utilizarse para crear un nuevo contrato de seguro en el que la póliza cubriera un período de tiempo nuevo y adicional. Dictaminó que el haber aceptado primas con posterioridad a la expiración de la póliza no extendía automáticamente la cubierta de la póliza más allá de su fecha de expiración.

Finalmente, en Prudential Ins. Co. of America v. Brookman, ante, frente a hechos similares, el Tribunal Apelativo de Maryland expresó, en apoyó para no extender la vigencia de la póliza a una fecha posterior a la establecida en el contrato de seguro, que:

> "[I]f the loss was not within the coverage of the policy contract, it cannot be brought within that coverage by invoking the principle of waiver or estoppel. Waiver and estoppel can only have a field of operation when the subject matter is within the terms of the contract. ... In other words by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by parties, to create a liability contrary to the express provisions of the contract that parties did make." Id. a la pág. 840, (citando a Homes Insurance Co. v. Campbell Motor Co.,150 So. 486, 489 (Ala. 1933) y Ruddock v. Detroit Life Ins. Co, 177 N.W. 242,248 (Mich. 1920)). (Énfasis nuestro.)

III

Resulta necesario e importante señalar que el caso de Rosario v. Atlantic Southern Insurance Co., ante, citado como fundamento en apoyo de su decisión por el tribunal de instancia, es distinguible del caso de autos.

En Rosario, la controversia giraba en torno a una cláusula de caducidad por falta de pago de primas y si la misma había sido renunciada o "waived" por la aseguradora al haber aceptado primas luego de vencido el plazo establecido para el pago de las mismas.[9] Este Tribunal

---

[9] **Este tipo de cláusula normalmente dispone que si el asegurado no paga las primas de la póliza en las fechas de pago o dentro del período de gracia concedido para ello, la aseguradora tendría derecho a invocar la caducidad de la póliza por falta de pago de las primas, aún cuando el**

dictaminó, en aquella ocasión, que las pólizas estaban en vigor toda vez que "la costumbre de cobrar primas vencidas constituye una renuncia de la cláusula por falta de pago, aún si se pagó luego de vencido el período de gracia y aunque la póliza diga lo contrario." Rosario, ante a la pág. 767.

El presente caso, sin embargo, dista mucho del anterior. En éste, no hay controversia en torno a ninguna cláusula que tenga el efecto de provocar la caducidad o suspensión de la póliza. Tampoco hay problema alguno con la cláusula de caducidad por no pago de primas debido a que en este caso, los pagos de primas se realizaron a tiempo. Estamos, por el contrario, ante una cláusula específica de terminación o expiración que establece clara y expresamente el período de cubierta de la póliza.

Este tipo de cláusula va dirigida a la cubierta y alcance (coverage and scope) de la póliza, que como señalamos, no puede extenderse a través de las doctrinas de "waiver" y "estoppel". Estamos pues, ante dos cláusulas o condiciones diferentes, una de caducidad y otra de terminación. En materia de seguros ambas tienen distintos significados:

"Termination" significa: "that policy has reached the term for which it was written"; 3 Holmes' Appleman on Insurance 2d., sec. 16.5, pág. 318 (1998); "cessation of coverage under contract due to the passage of time or

**término de expiración establecido en la póliza no hubiese transcurrido.**

occurrence of an event set forth in the policy". Id., sec. 16.7, pág. 326. (Énfasis nuestro.) Por otro lado, caducidad, conocido en inglés como "cancellation" significa: "termination of coverage before the expiration date set forth in the policy and may be made with or without cause depending upon the policy language and applicable statute." Id. (Énfasis nuestro.)

Vemos entonces que en Rosario, examinamos una cláusula de caducidad la cual, por determinados eventos, podría ocasionar la terminación de la cubierta, aún sin que hubiera transcurrido la fecha de expiración. Por el contrario, en el presente caso, nos enfrentamos a una cláusula de expiración, la cual establece el término específico después del cual no existirá cubierta alguna y no depende de ningún evento para que opere sino solamente del transcurso del tiempo.

Resulta claro que Rosario y el caso que hoy nos toca resolver presentan dos tipos de cláusulas distintas a las cuales no se les brinda el mismo tratamiento bajo las doctrinas de "waiver" y "estoppel". Tratar de aplicar la norma de Rosario al caso ante nos tendría el efecto de obviar la clara distinción que la jurisprudencia sobre esta materia ha establecido entre estos dos tipos de cláusulas.

Reiteramos pues, que encontrándonos ante una cláusula de expiración que por su naturaleza establece la extensión de la póliza, forzoso es concluir que se trata de una

disposición claramente dirigida al alcance y cubierta de la misma. Ello impide invocar con éxito las doctrinas de "waiver" y "estoppel" para sostener que hubo una renuncia a tal cláusula. Permitirlo tendría el efecto de extender la póliza a riesgos y eventos no pactados en el contrato original. Implicaría rescribir los términos del mismo y ampliar los beneficios provistos por la póliza a un período nuevo y adicional al expresamente acordado. Además, conllevaría reconocerle vida a un nuevo contrato de póliza distinto al originalmente pactado y que dejó de existir una vez transcurrió la fecha fija de expiración.

IV

Conforme los hechos incontrovertidos, el asegurado Pino falleció el 22 de agosto de 1999, esto es, casi año y medio luego de cumplir los sesenta y cinco (65) años, edad que, conforme los términos claros y específicos de la póliza, constituía la fecha de expiración de dicha póliza.

Siendo ello así, la compañía de seguro no viene en la obligación de pagar, a la beneficiaria designada en la póliza, el monto de la misma.[10] Ello en vista del hecho de que, de acuerdo con la norma vigente en nuestra jurisdicción, al transcurrir la fecha de expiración de la póliza terminó la relación contractual existente entre el

_____

[10] **El único remedio que alberga la peticionaria consta del mismo pago que en 1999 ASICO le envió y que, sin embargo, fue rechazado y devuelto por ésta. Es decir, sólo tiene derecho a recibir un reembolso por las primas cobradas luego de expirada la póliza, además de los intereses correspondientes a tales sumas.**

asegurado y la compañía de seguros por lo que, luego de esa fecha, no existía nada a lo cual dicha compañía pudiera haber renunciado.

V

Por los fundamentos antes expuestos, procede expedir el auto de certiorari radicado y confirmar la sentencia emitida en el presente caso por el Tribunal de Circuito de Apelaciones.

Se dictará Sentencia de conformidad.

**FRANCISCO REBOLLO LÓPEZ**
**Juez Asociado**

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Corali López Castro

   Demandante-peticionaria

       vs.               CC-2001-1039    CERTIORARI

Atlantic Southern Insurance
Company

   Demandada-recurrida

**SENTENCIA**

San Juan, Puerto Rico, a 11 de febrero de 2003

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto y dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Todos los Jueces intervienen por Regla de Necesidad. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente a la cual se unieron el Juez Presidente señor Andréu García y el Juez Asociado señor Hernández Denton.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Corali López Castro

    Demandante-Peticionaria


      vs.           CC-2001-1039     Certiorari


Atlantic Southern Insurance
Company

    Demandada-Recurrida


<u>Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se unen el Juez Presidente señor ANDRÉU GARCÍA y el Juez Asociado señor HERNÁNDEZ DENTON.</u>

San Juan, Puerto Rico, a 11 de febrero de 2003

> **. . . las ideas de justicia y equidad son esenciales y consustanciales a la noción del Derecho, el cual dejaría de cumplir sus finalidades morales y sociales si no aspirase a realizar la justicia, y no una justicia abstracta y teórica, sino una justicia realista y humana...**
>
> **. . . . el juez debe obediencia a la ley, y**

En el caso de autos, una mayoría del Tribunal resuelve que la efectividad de una póliza de seguro de vida había terminado a la fecha de su expiración,

a pesar de que la compañía aseguradora que expidió dicha póliza, que recibía los pagos de las primas mensuales correspondientes directamente de una cuenta bancaria del asegurado, **continuó cobrando dichas primas durante <u>19 meses</u> después de la referida fecha de expiración y hasta el fallecimiento del asegurado**. Por las razones que brevemente señalo a continuación, disiento. Veamos.

I

La opinión de la mayoría del Tribunal dedica la mayor parte de sus páginas a discutir algunos conceptos normativos y doctrinas jurídicas **de otras jurisdicciones** sobre cuándo y cómo se estima que una compañía de seguro ha renunciado a los términos de una póliza de seguro. En particular, se traen a colación varias decisiones de tribunales estatales norteamericanos que, al amparo del derecho que prevalece en esas jurisdicciones, han distinguido entre el vencimiento de una póliza por **"caducidad"** y el vencimiento de una póliza por **"expiración"** y que han resuelto que si bien una aseguradora puede renunciar a una cláusula de vencimiento por "caducidad", no puede renunciar a una cláusula de vencimiento por "expiración". Así, los patéticos hechos del caso de autos, que conturban el sentido de justicia de cualquier persona razonable, quedan subvalorados por el uso de unos conceptos normativos que no proceden de nuestro propio ordenamiento jurídico.

Dichos conceptos, **muy favorables a las compañías aseguradoras**, son objeto de una extensa consideración por la mayoría del Tribunal en su opinión. **Lo que no recibe ninguna atención, como se verá más adelante, son los conceptos normativos y doctrinas jurídicas de nuestra propia jurisdicción**

**que podrían favorecer a la beneficiaria de la póliza en cuestión.**

El análisis unilateral del asunto también se refleja en que la mayoría del Tribunal tampoco le da atención seria alguna al hecho crucial de que la compañía del caso de autos estuvo cobrando mes por mes, durante el largo período de 19 meses, las primas de la póliza supuestamente expirada, **sin chistar**, para luego negarse a pagar. En ese largo período de 19 meses la aseguradora cobró las primas de la póliza supuestamente vencida sin que los distintos funcionarios de ésta que seguramente sabían de ello--agentes de cuentas, empleados de tesorería, contables, auditores, ejecutivos--tomaran medida alguna para remediar la situación. **¿Cómo contabilizó la aseguradora tales pagos de primas?** Y más aun, **¿es que esa conducta taimada de la aseguradora no tiene consecuencias jurídicas?**

II

Pasando ahora a identificar, aunque sólo sea brevemente, los conceptos, doctrinas y figuras jurídicas de nuestro propio ordenamiento jurídico que la mayoría del Tribunal no menciona o desatiende en su opinión, pero que son pertinentes al caso de autos y podrían favorecer a la beneficiaria de la póliza de vida en cuestión, debe examinarse en primer lugar lo relativo al precedente específico que existe en nuestra jurisprudencia con respecto al caso de autos: Rosario v. Atlantic Southern Ins. Co., 95 D.P.R. 759 (1968), en adelante "Rosario".

La mayoría del Tribunal decreta en su opinión, en esencia, que nuestro dictamen en Rosario no aplica al caso de autos porque éste giraba en torno a una cláusula de **caducidad** de la póliza mientras que el que ahora nos ocupa gira en torno a una cláusula de **expiración** de la póliza.

Lo primero que sorprende sobre la distinción aludida que formula la mayoría en su opinión es que nada dice ésta sobre el diferente grado de finalidad que de ordinario tienen en nuestro derecho los términos de caducidad frente a los de expiración. Como bien señalamos en una opinión previa nuestra, **que involucraba precisamente a una compañía de seguros**, los términos de caducidad tienen un **"irremisible efecto extintivo de derechos"** que no tienen otros términos. <u>E.L.A. v. Great Amer. Ins. Co.</u>, 106 D.P.R. 825, 833 (1978). Se caracterizan por su tajante finalidad. Por ello, si en <u>Rosario</u> estuvimos compelidos a responsabilizar a la aseguradora a pesar de que estaba en juego un drástico término de caducidad, ¿cómo es posible que en el caso de autos la mayoría libere a la aseguradora cuando sólo está en juego un mero término de expiración, que en nuestro derecho en general es de menor finalidad que el de caducidad? La mayoría ni alude a esta incongruencia. **Ciertamente no explica porqué en el campo especializado del derecho de seguros de Puerto Rico deba invertirse el grado de finalidad que tienen los conceptos normativos referidos en nuestro ordenamiento jurídico ordinariamente.**

Por otro lado, y más importante aun, ¿es realmente inaplicable al caso de autos lo que hicimos en <u>Rosario</u>? Allí, más allá de los meros conceptos y los legalismos, decidimos que una póliza de vida continuaba en vigor, a pesar de que el asegurado había dejado de pagar varias de las primas correspondientes después de expirado el período de gracia para ello. Resolvimos de ese modo porque la aseguradora cobró las primas pendientes de pago aunque dicho cobro se hizo muy tardíamente, pasados ya seis plazos desde la fecha en que la póliza había expirado. Afincándonos en el principio medular de que los contratos de seguro **se interpretan liberalmente a favor**

**del asegurado**, determinamos que al cobrar las primas ya vencidas, la aseguradora había renunciado al vencimiento automático de la póliza. Aunque en dicha opinión hicimos extensa referencia a enjundiosos aspectos técnicos de la normativa aplicable, concluimos nuestro análisis con una clara alusión a la determinante estimativa jurídica subyacente en nuestro dictamen. Hicimos patente nuestro juicio sobre lo que requería la equidad en ese caso. Expresamente señalamos entonces que era **insostenible** que una compañía de seguro **cobrase varias primas de una póliza ya vencida para luego** **negarse a pagar al beneficiario el monto de la póliza al** **fallecer el asegurado, a base de que la póliza había vencido**. Aparte de los conceptualismos, por clara analogía, parece igualmente **insostenible** que una aseguradora continúe cobrando por 19 meses las primas de una póliza que ya estaba expirada, para luego negarse a pagar el monto de ésta al fallecer el asegurado, a base de que la póliza había vencido. El claro sentido jurídico y justiciero de nuestra decisión en <u>Rosario v.</u> <u>Atlantic Southern Ins. Co.</u>, *supra,* y su innegable valor como precedente aquí, están ausentes en la decisión de la mayoría en el caso de autos, ahogados por el intenso conceptualismo unilateral y foráneo que arropa al decreto mayoritario.

III

Es menester notar que en el caso de autos nos enfrentamos a una situación novel, que no está regida concretamente por nuestro Código de Seguros, 26 L.P.R.A. sec. 101, *et seq.* Por ello nuestra responsabilidad judicial para adjudicar la cuestión ante nuestra consideración es acudir a las figuras que sean aplicables al caso de autos, provenientes de nuestro **Código Civil.** Ello, por razón de que hemos resuelto ya que el Código Civil de Puerto Rico constituye la **"fuente de derecho**

**supletorio al que deberá acudirse"** para adjudicar cuestiones relativas a seguros en situaciones no previstas por el Código de Seguros. Banco de la Vivienda v. Pagán Ins. Underwriters, 111 D.P.R. 1, 6 (1981). Pasemos, pues, a examinar brevemente algunas figuras o conceptos normativos civilistas aplicables aquí.

La mayoría en su opinión nada menciona sobre nuestra normativa con respecto a la **novación**. Como se sabe, nuestro ordenamiento jurídico expresamente dispone en el Art. 1157 del Código Civil que las **obligaciones pueden modificarse de varias maneras**, una de las cuales consiste en **variar sus condiciones principales**. 31 L.P.R.A. sec. 3241. En efecto, hemos reconocido en nuestra jurisprudencia que en nuestra jurisdicción existen dos tipos de **novación**: (1) la extintiva, mediante la cual se extingue una obligación que existía antes; y (2) la modificativa, que sólo apareja la variación de alguna condición de una obligación que subsiste en cuanto a sus otros términos. Véase, Teacher's Annuity v. Sociedad de Gananciales, 115 D.P.R. 277 (1984); Miranda Soto v. Mena Eró, 109 D.P.R. 473 (1980); Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378 (1973).

Una de las novaciones modificativas que hemos reconocido expresamente en nuestra jurisprudencia es precisamente aquella en la que se cambia **la duración del término de un contrato**. Atocha Thom McAn, Inc. v. Registrador, 123 D.P.R. 571 (1989). Se trata de un tipo de modificación que ha sido objeto de examen en la doctrina civilista. Puig Brutau, *Fundamentos de Derecho Civil*, Tomo I, Vol. II, 3ra ed., págs. 388-391, 397-399 (1985).

La novación referida ocurre cuando las partes así lo han acordado, o **cuando tal intención de las partes puede inferirse de las circunstancias que rodean el caso particular**. Warner Lambert Co. v. Tribunal Superior, *supra*, pág. 389; Hernández v.

Burgos, 40 D.P.R. 460, 463 (1930). Existe, pues, la novación **tácita**. Vázquez Bote, *Derecho Civil de P.R.*, Tomo III. Vol. I, pág. 380 (ed. 1976). Véase, además, Teacher's Annuity v. Sociedad de Gananciales, *supra*, págs. 289-290. También es claro que los contratos de seguro son susceptibles de modificarse mediante la novación. Véase, Muñiz v. Aetna Casualty & Surety Co., 38 D.P.R. 839 (1928); y Teacher's Annuity v. Sociedad de Gananciales, *supra.*

En el caso de autos, el asegurado permitió que se continuaran haciendo descuentos de su cuenta bancaria para pagar las primas de la póliza de vida en cuestión durante un período de 19 meses después de la fecha de vencimiento de ésta. Por su parte, la aseguradora continuó recibiendo y aceptando tales pagos durante todo ese extenso tiempo. Tales circunstancias apuntan seguramente a una modificación tácita por ambas partes del término de vencimiento de la póliza. Ello constituye la interpretación más razonable del comportamiento tanto del asegurado como de la compañía aseguradora. Si el pago de las primas hubiese ocurrido sólo dos o tres veces después de la fecha de vencimiento de la póliza, podría conjeturarse que se debió a un error tanto del asegurado como de la aseguradora. **Lo que no se puede asumir es que tanto el asegurado como la aseguradora cometieron tal error, sin ni siquiera darse cuenta de ello, mes por mes, durante 19 meses.** Tal interpretación sería patentemente contraria a la experiencia de las personas razonables que examinan a tiempo sus estados de cuentas bancarios, y al *modus operandi* de las empresas ordinarias que contabilizan sus ingresos debidamente. No podemos suponer que las partes aquí actuaron irracionalmente sino todo lo contrario: debemos presumir que las cosas ocurrieron de acuerdo a su curso ordinario. Véase la Regla 16 de Evidencia,

particularmente los incisos (4), (7), (11), (19) y (20). 32 L.P.R.A., Ap. IV, R.16.

Aquí cuando menos pudo haber mediado una novación modificativa de la póliza de vida en cuestión pero la mayoría ni menciona el asunto en su opinión.

IV

Existe otra normativa civilista en nuestro propio ordenamiento jurídico que es pertinente al caso de autos, que la mayoría del Tribunal tampoco discute en su opinión. Se trata de la normativa relativa a **la buena fe en los contratos**.

Como se sabe, el Art. 1210 del Código Civil de Puerto Rico dispone que los contratos válidos obligan **"no sólo al cumplimiento de lo expresamente pactado sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley"**, 31 L.P.R.A. sec. 3375. Fundamentados en esta disposición, hemos reconocido en nuestra jurisprudencia que los tribunales tienen la facultad de ejercer una función modificadora con respecto a los términos de un contrato a los fines de exigir deberes especiales de conducta a alguna parte contratante cuando la buena fe lo requiera. **Hemos aplicado la referida doctrina de la buena fe incluso con respecto a los contratos de seguro.** Rodríguez Reyes v. Caribbean Hosp. Corp., 141 D.P.R. 182, 187 (1996); González v. Commonwealth Ins. Co., 140 D.P.R. 673, 683-684 (1996); Mun. de San Juan v. Great Amer. Ins. Co., 117 D.P.R. 632, 637 (1986). **Expresamente hemos resuelto que un asegurador tiene un deber de actuar de buena fe hacia el asegurado**, al decidir que una póliza sigue en vigor aunque el asegurado no haya cumplido con su deber de notificar la reclamación correspondiente dentro del término de vigencia de la póliza, si la aseguradora a su vez no cumplió con su deber de buena fe de advertirle al asegurado

sobre la insuficiencia de unos documentos sometidos por éste. Rodríguez Reyes v. Caribbean Hosp. Corp., *supra*.

Es menester resaltar que con referencia al principio de buena fe, hemos reconocido que en todo contrato está implícito **el elemento de justicia objetiva**, por lo que hay facultad en los tribunales para atemperar la excesiva onerosidad de algún término contractual que hiera **el principio de la reciprocidad de las prestaciones**. Util. Cons. Servs. v. Mun. de San Juan, 115 D.P.R. 88, 89-90 (1984). Véase, además, López de Victoria v. Rodríguez, 113 D.P.R. 265 (1982); y M. Godreau, *Lealtad y Buena Fe Contractual*, 58 Rev. Jur. U.P.R. 367 (1989).

A la luz de la normativa de la buena fe referida antes, en el caso de autos cabe cuando menos preguntarse si es cónsono con dicha normativa el comportamiento de la aseguradora de seguir cobrando las primas de la póliza mes por mes durante 19 meses después del supuesto vencimiento del contrato, para entonces negarse a honrar la póliza al fallecer el asegurado. Tal comportamiento no parece estar en armonía con el principio de la reciprocidad de las prestaciones, en vista de que para la aseguradora los pagos de la prima durante 19 meses no dio lugar a ninguna consecuencia de aseguramiento.

De la aplicación aquí del referido principio civilista sobre la buena fe, pues, surgiría la obligación de la aseguradora de honrar el contrato de seguro en cuestión aun luego de su fecha de terminación, como contraprestación por las primas recibidas y retenidas después de esa fecha. Esta consecuencia del principio de la buena fe estaría en clara armonía con las normas y conceptos más elementales del derecho de seguros. Como bien se señala en la eminente obra *Couch on Insurance*, el pago de las primas de una póliza de seguro y el aseguramiento que garantiza tal póliza son prestaciones recíprocas inextríncables:

"The premium paid by the insured and the peril assumed by the insurer are **correlatives, inseparable from each other...** attachment of risk is an implied condition of payment of premium".[11]

"Premium and risk are the very essence a contract of insurance and each is **dependent and inseparable from the other**".[12]

A pesar de lo pertinente que es al caso de autos el referido principio civilista de la buena fe, la mayoría del Tribunal ni menciona el asunto en su opinión, aunque la postura que sí favorece es a todas luces contraria al elemento de justicia objetivo implícito en el contrato de seguros del caso de autos.

V

En los acápites anteriores de esta Opinión, hemos hecho hincapié en que nuestro propio ordenamiento jurídico tiene varios conceptos normativos y doctrinas jurídicas que podrían favorecer al beneficiario de la póliza de seguro de vida del caso de autos, que la mayoría del Tribunal no consideró de modo alguno en su opinión. Ahora en este acápite debemos resaltar **que en las propias jurisdicciones estatales norteamericanas en cuya jurisprudencia se apoya el dictamen mayoritario, se ha reconocido una postura frente a situaciones como las que aquí nos concierne que es también contraria a la adoptada por la mayoría en su opinión aquí.**

En efecto, numerosos tribunales estatales de Estados Unidos, en casos similares o análogos al de autos, han resuelto que cuando una compañía aseguradora a sabiendas recibe y retiene primas pagadas por el asegurado de una póliza ya vencida, dicha compañía renuncia a la defensa de que la póliza

---

[11] 5 *Couch on Insurance*, 2d, págs. 534-535.
[12] 6 *Couch on Insurance*, 2d, pág. 849.

no estaba en vigor y viene obligada a pagar el monto del seguro al beneficiario al morir el asegurado. El principio se resumió en forma clara y elocuente por el Tribunal Supremo de Alabama en Washington Nat'l Ins. Co. of América v. Parker, 164 So. 303, 304 (1935):

> "Probably there is no principle of insurance law more firmly settled, nor better grounded in justice and reason, than that an insurer, who receives and retains premiums, the very consideration for carrying the insurance risk, with knowledge of facts which, under stipulations for his benefit, would, in the absence of such knowledge, empower him to treat the policy as having never been in force, or as being no longer in force, will be held to have waived such stipulations. Waiver, strictly speaking, is a matter of intent. But, in such case, no proof of actual intent is required. Any other intent, in such case, would work a positive wrong or fraud on the insured. The law charges the insurer with the intent to waive under the doctrine of estoppel."

Así mismo, el Tribunal Supremo de Arkansas, en Riverside Ins. Co. of América v. Parker, 375 S.W. 2d 225, 237 (1964), ha enfatizado que:

> An insurer will not be permitted to retain unearned premiums paid, and still deny liability on the policy.

El principio mencionado antes ha sido sostenido por tantos tribunales estatales norteamericanos que una de las conocidas autoridades en materia de derecho de seguros de ese país afirma que:

> "Generally, an insurer is precluded from asserting a forfeiture where, after acquiring knowledge of facts constituting a breach of condition, it retains the unearned portion of the premium or fails to tender it back with reasonable promptness... when insurer received check in payment of policy, it was under duty either to issue policy or else notify insured within reasonable time that it was refusing to issue policy and return amount of premium."

Holmes' *Appleman on Insurance*, 2d, Vol. V, págs. 389-391. Véase, además, Larr v. Minnesota Mut. Life Ins. Co., 924 F 2d 65, (Miss. 1991); U & I Properties, Inc. v. Republic Nat'l Life

Ins. Co., 519 P 2d 19 (Wash. 1974); Chicago Ins. Co. v. Camors, 296 F Supp 1335 (Ga. 1969); Englishtown Auction Sales, Inc. v. Mount Vernon Fire Ins. Co., 271 A 2d 292 (N.J. 1970); Pitts v. New York Life Ins. Co., 148 S.E. 2d 369 (Miss. 1966); Combined American Ins. Co. v. Parker, 377 S.W. 2d 213 (Tex. 1964). Veáse también, 9 *Couch on Insurance*, 2d. pág. 684.

A la luz de esta realidad jurisprudencial y doctrinal norteamericana, **¿cómo puede justificarse la decisión de la mayoría en el caso de autos?**

VI

Desde antaño, y en numerosas ocasiones, este Foro ha resaltado la esencial misión que tenemos de hacer valer la justicia en los casos que llegan ante nos. Véase, Magriz v. Empresas Nativas, 143 D.P.R. 63, 73 (1997); Rodríguez Sanabria v. Soler Vargas, 135 D.P.R. 779, 785 (1994); Villanueva v. Hernández Class, 128 D.P.R. 618, 636 (1991); Sánchez Acevedo v. E.L.A., 125 D.P.R. 432, 438 (1990); In re: Santos Vías, 122 D.P.R. 881, 887 (1988); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 73 (1987); Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. 283, 293 (1988); Imp. Vilca v. Hogares Crea, 118 D.P.R. 679, 685 (1987); Morales Garay v. Roldán Coss, 110 D.P.R. 701, 705 (1981); Bco. Metropolitano v. Berríos, 110 D.P.R. 721, 725 (1981); Sucn. Bravo v. Srio. de Hacienda, 106 D.P.R. 672, 675 (1998); Pueblo v. Santiago, 106 D.P.R. 1, 4 (1977); Futurama Import Corp. v. Trans Caribbean, 104 D.P.R. 609, 612 (1976); In re: Vélez, 103 D.P.R. 590, 599 (1975); Quiñónez v. A.C.A.A., 102 D.P.R. 746, 751 (1974); Piovanetti Doumont v. Martínez, 99 D.P.R. 663, 667 (1971); Silva v. Comisión Industrial, 91 D.P.R. 891, 903-904 (1965); Piovanetti v. Vivaldi, 80 D.P.R. 108, 122-123 (1957); Infante v. Leith, 85 D.P.R. 26, 41 (1962); Figueroa v. Díaz, 75 D.P.R. 163, 175

(1953); Rodríguez v. Tribl. Mpal. & Ramos, 74 D.P.R. 656, 667 (1953); Sosa v. Sucn. Morales, 58 D.P.R. 360, 363 (1941); Porto Rico R., L. & P. Co. v. Corte de Distrito, 38 D.P.R. 340, 346 (1928); Mun. de Vega Baja v. Smith, 27 D.P.R. 632, 637-638 (1919). Incluso hemos aludido a esa alta misión llamándola **"nuestra indeclinable función rectora de hacer justicia"**, In re: Santos Vías, *supra*, a la vez que hemos reconocido que **"el sentido de injusticia que inquieta la conciencia . . . es fuente espontánea de la formación del Derecho"** . . ., Figueroa v. Díaz, *supra*. Lo hemos sintetizado de manera elocuente en una breve expresión, tantas veces citada, en Sucn. Bravo v. Srio. de Hacienda, *supra*.

> "Somos Tribunal de Justicia y aunque la Justicia se pinta ciega, como símbolo de su imparcialidad, los tribunales que la imparten deben tener los ojos abiertos para impedir que allí se frustre. Cuando de hacer justicia se trata, no puede haber moldes técnicos que aprisionen los remedios justos."

Ese profundo pensamiento jurídico también ha sido expresado, de modo más llano pero contundentemente claro, por unos jueces de este Foro en Quiñones v. A.C.A.A., al afirmar que:

> "Si no hay remedio en ley, el tribunal está justificado en crearlo. Después de todo, son tribunales de justicia y no centros académicos para dirimir sutilezas técnicas."

En el caso de autos, no puede negarse lo injusto de la conducta de la aseguradora. Esta se lucró por 19 meses corridos del pago de las primas de una póliza supuestamente expirada. Luego, al recibir una reclamación de la viuda del asegurado, la beneficiaria de la póliza, la aseguradora se negó a honrar la póliza por su supuesta expiración. Frente a este patente desafuero, la mayoría del Tribunal opta por invocar unas distinciones conceptuales, provenientes de otras jurisdicciones. Se opta por tal curso decisorio a pesar de que

en nuestro propio ordenamiento jurídico existen conceptos y doctrinas que no sólo son claramente aplicables, sino que, además, resultarían en un dictamen que le haga justicia a la viuda que la aseguradora deja desamparada con nuestro aval aquí. Se opta por tal curso decisorio a pesar de que este Tribunal la mayor de las veces **"se ha resistido a adoptar doctrinas y principios proclamados por tribunales continentales que se encuentran en conflicto fundamental con nuestra tradición jurídica y nuestro modo de vivir como pueblo"**. Infante v. Leith, *supra*, pág. 41, nota al calce núm. 4.

Es por todo lo anterior que yo, disiento.


                                        JAIME B. FUSTER BERLINGERI
                                        JUEZ ASOCIADO