Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| VILLAS DE HUMACAO LTD, <br><br> Apelado <br><br> v. <br><br> MAPFRE PRAICO INSURANCE COMPANY <br><br> Apelante | KLAN202500480 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de Humacao <br><br> Caso Núm.: HU2019CV01348 (208) <br><br> Sobre: Daños |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Candelaria Rosa, la jueza Álvarez Esnard y la jueza Díaz Rivera.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 5 de septiembre de 2025.

Comparece Mapfre Praico Insurance ("MAPFRE" o "la Apelante"), y solicita la revocación de la *Sentencia Parcial* emitida en reconsideración el 28 de febrero de 2025, por el Tribunal de Primera Instancia, Sala de Humacao ("foro *a quo*" o "foro primario"), notificada el 4 de marzo del corriente año. Mediante la referida *Sentencia Parcial,* el foro primario declaró Ha Lugar la *Moción* de *Sentencia Sumaria Parcial* presentada por Villas de Humacao LTD, Almaco Capital Corp. ("Villas del Humacao" o "la Asegurada"), Attenure Holdings Trust 2 ("Attenure") y HRH Property Holdings LLC ("HRH"), (en conjunto, "las Apeladas"), en el caso de epígrafe, y concedió a las Apeladas la suma de $447,742.57 como pago parcial de su reclamación a MAPFRE, así como **intereses por mora** sobre dicha cuantía, producto del ajuste estimado que MAPFRE emitió en el trámite de la reclamación.

Número Identificador

SEN(RES)2025_____

Por los fundamentos que expondremos a continuación, **modificamos** la *Sentencia Parcial* apelada a los únicos fines de **revocar la imposición de intereses por mora** a MAPFRE sobre el monto del ajuste y así modificada, **confirmamos**.

## I.

El 5 de septiembre de 2019, las Apeladas presentaron Demanda en contra de MAPFRE a los fines de cobrar la indemnización del seguro por las pérdidas causadas por el Huracán María.[1] En síntesis, las Apeladas alegaron que tras haber transcurrido casi dos años del impacto del Huracán María, al realizar el ajuste de los daños cubiertos bajo la póliza, MAPFRE rehusó pagar más de $447,743.00 por concepto de pérdidas incurridas por las Apeladas.

En respuesta, el 11 de marzo de 2019, MAPFRE presentó *Contestación a Demanda.*[2]

Tras varios incidentes procesales, el 13 de diciembre de 2024, las Apeladas presentaron *Moción de Sentencia Sumaria Parcial* en la que solicitaron al foro primario que ordenara el pago de la suma de $447,742.57 a su favor por tratarse de una suma líquida y exigible que no estaba sujeta a controversia.[3]

Por su parte, el 2 de enero de 2025, MAPFRE presentó Oposición *a Moción de Sentencia Sumaria.*[4] Allí expuso que la suma de $447,742.57 no es líquida ni exigible, toda vez que las partes no concurren en que esa cantidad específica extingue la reclamación en su totalidad y la responsabilidad de MAPFRE. Sostuvo, además, que los Apelados alegaron que no están de acuerdo con el ajuste realizado por MAPFRE y que les corresponde un pago mayor como pago total bajo la póliza.

---

[1] Véase, Apéndice del Recurso, págs. 1-17.
[2] *Íd.,* págs.19-53.
[3] *Íd.,* págs.54-444.
[4] *Íd.,* págs.445-464.

El 17 de enero de 2025, el foro primario notificó *Resolución* en la que denegó a las Apeladas la *Moción de Sentencia Sumaria Parcial.*[5] Inconformes, el 3 de febrero de 2025, las Apeladas presentaron *Moción de Reconsideración* a los fines de revisar la denegatoria a su solicitud.[6] En esencia, las Apeladas esbozaron que hubo un reconocimiento de deuda por parte de MAPFRE en cuanto a la suma ofrecida como ajuste y que ello es independiente de la cuantía reclamada en la *Demanda*. Expuso, además, que dicha suma de $447,742.57 era líquida y exigible, por lo que procedía la imposición de intereses por mora sobre dicha cuantía, desde la presentación de la Demanda.

Mediante *Sentencia Parcial* emitida el 28 de febrero de 2024, notificada el 4 de marzo del corriente año, **el foro primario declaró *Ha Lugar* la *Moción de Reconsideración* presentada por las Apeladas y ordenó a MAPFRE emitir el pago parcial que surge del Ajuste emitido por la Aseguradora por la suma de $447,742.57, más los intereses por mora calculados hasta la fecha en que MAPFRE emita el pago parcial.[7]** En dicha Sentencia Parcial el foro primario formuló las siguientes determinaciones de hechos:

### DETERMINACIONES DE HECHOS

1. MAPFRE emitió la póliza de seguros número 54-CP-200004622-0 a favor de Villas de Humacao, con período de cubierta del 31 de diciembre de 2016 hasta el 31 de diciembre de 2017.

2. Bajo la Póliza, la "Propiedad Cubierta" incluye la propiedad identificada como Villas de Humacao, localizada en Carr. 908, km 1.6, Humacao, PR 00791, Guaynabo, PR 00969 (Location 3, Buildings 1-23).

3. El 20 de septiembre de 2017, el huracán María pasó por Puerto Rico.

4. La Póliza obliga a la Aseguradora a pagar por la pérdida física directa o daños a la Propiedad Cubierta causados por o resultantes de cualquier Causa de Pérdida Cubierta ("We will pay for direct physical loss of or damage to Covered Property at the premises described in the

---

[5] *Íd.,* págs.465-472.
[6] *Íd.,* págs.476-575.
[7] *Íd.,* págs.740- 762.

Declarations caused by or resulting from any Covered Cause of Loss.").

5. La Póliza define el termino Causa de Pérdida Cubierta ("Covered Causes of Loss") como cualquier pérdida física directa, excepto que la pérdida esté excluida o limitada por la Póliza ("direct physical loss unless the loss is excluded or limited in this policy").

6. No hay exclusión o limitación en la Póliza específica para daños ocasionados por un huracán o por vientos y agua asociados a un huracán.

7. El huracán María, así como los vientos y agua asociados con el huracán María, ocasionaron daños a la Propiedad Asegurada.

8. Villas de Humacao presentó una reclamación a MAPFRE el 30 de septiembre de 2017.

9. MAPFRE le asignó el número 20171274465 a la reclamación presentada por Villas de Humacao bajo la Póliza de Seguro.

10. Posteriormente, el 10 de julio de 2018, Villas de Humacao a través del ajustador público le presentó a Mapfre estimado de todos los daños a la Propiedad en apoyo a su reclamación bajo la Póliza.

11. El 14 de mayo de 2018, Mapfre notificó un ajuste a Villas de Humacao únicamente por la cubierta de Special Class: Perimeter Fences por la cantidad de $2,196.25.

12. El 26 de marzo de 2019, a través del Sr. Omar Acevedo, Mapfre notificó una oferta y Ajuste a Villas de Humacao por la cantidad de $447,742.57.

13. Mediante el Ajuste, la Aseguradora concluyó que los daños cubiertos bajo la Póliza y causados a la Propiedad Asegurada ascienden a $447,742.57, luego de aplicar los términos y condiciones bajo la Póliza.

14. El 5 de septiembre de 2019, Villas de Humacao presentó la Demanda sobre sentencia declaratoria, incumplimiento de contrato y dolo en la ejecución del contrato.

15. El Asegurado estima que sus daños ascienden a $4,312,363.40, sujeto a los deducibles aplicables.

16. El 5 de marzo de 2024, MAPFRE le notificó a Villas de Humacao otro ajuste por la cantidad de $241,698.08. El segundo ajuste tenía $206,044.49 dólares menos que el primer ajuste.

17. El descubrimiento de prueba culminó el 18 de octubre de 2024, con la deposición del Rep. Corporativo de MAPFRE.

18. La Aseguradora no efectuó pagos parciales al Asegurado.

19. El ajuste de la aseguradora es una deuda líquida, vencida y exigible.[8]

Conforme a las anteriores determinaciones de hechos el foro primario concluyó que al amparo de la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V., R.36.3, procedía la *Moción de Sentencia Sumaria Parcial* presentada por las Apeladas, por lo que reconsideró

---

[8] *Íd.,* págs.741-742.

su denegatoria. De igual forma, **como cuestión de derecho**, **el foro *a quo* concluyó que procedía** en este caso **el pago de intereses por mora** sobre el monto objeto del ajuste el cual ascendía a la suma de $447,742.57. Razonó el foro primario de forma análoga a lo resuelto por este Tribunal de Apelaciones en el caso con designación alfanumérica KLCE202400356. Por tanto, dispuso que el cálculo de los intereses por mora sobre dicha suma parcial deberán computarse desde la fecha en que MAPFRE hizo el ajuste por la suma de $447,742.57, siendo en el caso que nos ocupa el 26 de marzo de 2019.[9] En su aplicación del derecho el foro *a quo* razona que la referida suma es líquida y exigible desde el momento del ajuste, toda vez que este representa la postura institucional sobre la obligación de pago y que por ello proceden los intereses por mora desde esa fecha.

El 18 de marzo de 2025, MAPFRE presentó *Moción* de *Consignación* y procedió a consignar la suma de $447,742.57 mediante el cheque de gerente número 220281888 de Oriental Bank, en cumplimiento con la *Sentencia Parcial* emitida por el foro primario.[10] Sin embargo, en desacuerdo, con la imposición de intereses por mora sobre la suma de $447,742.57, el 19 de marzo de 2025, MAPFRE presentó *Moción de Reconsideración* ante el foro primario.[11] Allí esbozó que la imposición de intereses por mora en la *Sentencia Parcial* es contraria a la normativa jurisprudencial en *Consejo de Titulares Cond. Playa Azul II* v. *MAPFRE PRAICO, Op. 26 de diciembre de 2024*, 2024 TSPR 140, 215 DPR _____ (2024), toda vez que no concurren los requisitos dispuestos debido a que la obligación no está vencida ni es líquida ni exigible y **el acreedor no la exigió ni judicial ni extrajudicialmente**.

---

[9] *Íd.,* pág. 747. Véase la Determinación de Hecho Núm. 12 de la *Sentencia Parcial.*
[10] *Íd.,* págs.795-797.
[11] *Íd.,* págs.748-754.

Por su parte, el 6 de abril de 2025, las Apeladas se opusieron a la *Moción de Consignación* de MAPFRE por no haber incluido los intereses por mora calculados hasta que la Aseguradora emitiera el pago parcial.[12]

Mediante *Resolución* emitida el 29 de abril de 2025, el foro primario declaró *No Ha Lugar* la *Moción de Reconsideración* presentada por MAPFRE.[13] Sobre esos extremos, el 14 de mayo de 2025, MAPFRE presentó *Moción de Reconsideración,* en cuanto a la denegatoria del foro primario a su *Moción de Consignación,* la cual fue denegada por dicho foro.[14]

Inconforme con el dictamen, el 28 de mayo de 2025, MAPFRE presentó el recurso de epígrafe y como único señalamiento de error sostiene lo siguiente:

> Erró el TPI al imponer a MAPFRE el pago de intereses por mora sobre el ajuste del estimado de daños.

Por su parte, los Apelados comparecen ante nos oportunamente mediante *Alegato de la Parte Apelada.* En esencia, sostienen que la cuantía producto de la *Sentencia Parcial* es líquida, vencida y exigible, por lo que no incidió el foro primario al imponer a MAPFRE el pago de intereses por mora.

## II.
### A. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers,* 215 DPR___ (2025), 2025 TSPR 3, pág. 10; Véase, además, *BPPR v. Cable Media,* 215 DPR___ (2025) 2025 TSPR 1. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V,

---

[12] *Íd.,* págs.798-801.
[13] *Íd.,* págs. 789-794.
[14] *Íd.,* págs. 807-810. y página 008 del Apéndice Sup. del *Alegato de la Parte Apelada.*

R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*. No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, surja de manera preponderante la inexistencia de controversia sobre los hechos medulares del caso. *Soto y otros v. Sky Caterers*, supra.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. V. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo estableció "el estándar específico" que debe utilizar este Foro al "revisar denegatorias o concesiones de Mociones de Sentencia Sumaria". A esos efectos, el Tribunal dispuso que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los

requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra.* "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros,* 213 DPR 80, 91-92 (2023) citando a *Meléndez González et al. v. M. Cuebas, supra.*

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra, pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Consejo Tit. v. Rocca Dev. Corp., et als.,* supra, 215 DPR___ (2025) 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

Por su parte, la Regla 36.4 de Procedimiento Civil, *supra*, dispone que si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos. De la misma forma, el tribunal deberá establecer hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando así que los procedimientos ulteriores sean justos en el pleito. *Íd.* A tono con lo anterior, la precitada regla establece que, al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. *Íd.*

### B. El Contrato de Seguro

La materia de seguros está investida de alto interés público debido a que desempeña un rol trascendental en la protección de riesgos que amenazan la vida o el patrimonio de la ciudadanía. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 988-989 (2023).

Cónsono con lo anterior, el *Código de Seguros de Puerto Rico*, Ley Núm. 77 de 19 de junio de 1957, 26 LPRA sec. 101 dispone que una póliza o contrato de seguro es aquel "mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". 26 LPRA sec. 102. "En resumen, a cambio del pago de una prima, se transfiere el riesgo de un evento específico a la aseguradora, quien está obligada a cubrir los daños económicos por los que el asegurado deba responder". *OCS V. CODEPOLA*, 202 DPR 842, 859 (2019). Por ello, "[e]l propósito de la póliza está

directamente relacionado con los riesgos cubiertos por ésta". *Integrand Assurance v. CODECO et al.*, 185 DPR 146, 162 (2012). Este contrato está revestido de un interés público sustancial. *Íd.*, pág. 161-162. No obstante, "el Código Civil es fuente de *derecho supletorio* al interpretar correctamente un contrato de seguro" (Énfasis en el original). *López v. Atlantic Southern Ins. Co.*, 158 DPR 562, 569 (2003).

La relación entre la aseguradora y el asegurado es de naturaleza contractual, regida por lo pactado en el contrato de seguros y "constituye la ley entre las partes". *TOLIC v. Febles Gordián*, 170 DPR 804, 812 (2007). Al igual que todo tipo de contrato, el contrato de seguros debe interpretarse globalmente, a partir del conjunto total de sus términos y condiciones, según establecidos en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud que sean añadidos a la póliza para formar parte de ésta. Art. 11.250 del Código de Seguros de Puerto Rico, 26 LPRA sec. 1125.

De otro lado, el Código de Seguros, *supra*, dispone que la oferta que realice una aseguradora debe ser el resultado de un ajuste rápido, justo y equitativo, y por una cantidad razonable según el derecho del reclamante. Art. 27.161 del Código de Seguros, incisos (6) y (8), 26 LPRA sec. 2716a.

El Código de Seguros, obliga a las aseguradoras a realizar una investigación, ajuste y resolución de las reclamaciones que tengan ante su consideración en un término máximo de noventa (90) días conforme lo establece el **Art. 27.162** del Código de Seguros, 26 LPRA sec. 2716*b*. En ese periodo de tiempo la aseguradora puede optar por el pago total de la reclamación; la denegatoria de esta, siempre que esté debidamente fundamentada o cerrar el proceso de reclamación por inactividad del reclamante.

Por otra parte, el Artículo 27.161 (19) del Código de Seguros, 26 LPRA sec. 2716*a* dispone que en el ajuste de reclamaciones ninguna persona requerirá al asegurado o reclamante que firme un relevo que pueda ser interpretado como que releva al asegurador de aquellas obligaciones contractuales que no fueron objeto de la transacción.

De otra parte, el Código de Seguros, *supra*, en su Art. 2.030 le confiere al Comisionado de Seguros el poder para dictar reglas y reglamentos para hacer efectiva cualquier disposición del Código de Seguros y para reglamentar sus propios procedimientos, siguiendo el procedimiento establecido para ello en la Ley de Procedimiento Administrativo Uniforme de Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et. seq.* A tenor con ello, el Comisionado de Seguros puso en vigor la Regla XLVII del *Reglamento del Código de Seguros*, Reglamento Núm. 2080 de 6 de abril de 1976, la cual se creó con el propósito de atender las prácticas desleales en el ajuste de reclamaciones. Específicamente, el Art. 7 trata sobre los métodos para un ajuste rápido y equitativo establece que en los casos en los cuales no exista controversia sobre uno o varios aspectos de la reclamación, deberá hacerse el pago correspondiente, independientemente de la existencia de una controversia en cuanto a otros aspectos de la reclamación.

Asimismo, la Regla 47(7)(d) del *Reglamento del Código de Seguros* establece expresamente que cuando "no exista controversia sobre uno o varios aspectos de la reclamación, se deberá hacer el pago correspondiente, independientemente de que exista una controversia en cuanto a otros aspectos de la reclamación, siempre que el mismo se pueda efectuar sin perjuicio de ambas partes."

En *Carpets & Rugs v. Tropical Reps*, 175 DPR 615 (2009) el Tribunal Supremo de Puerto Rico resolvió que una comunicación de una aseguradora, como oferta o ajuste final de una reclamación, era

admisible en evidencia, pues no se trata de una postura de "negociación conducente contrato de transacción". Íd, pág. 638. Se concluyó que la carta de ajuste en el referido caso no se emitió "voluntariamente en un proceso de negociación conducente al contrato de transacción, sino como parte de [la] obligación [de la aseguradora] al amparo del Código de Seguros de Puerto Rico de resolver de forma final una reclamación de un asegurado [...]". Íd., pág. 639.

Una aseguradora está obligada por ley a "notificar una oferta razonable" *Íd.,* pág. 634. Por ello, "ante un reclamo judicial", una aseguradora no puede "denegar partidas que en su ajuste inicial entendió procedentes". *Íd.,* pág. 636. Es decir que la aseguradora no puede retractarse de este ajuste, ya que fue realizado y comunicado como parte de su obligación de resolver la reclamación al amparo del Código de Seguros. *Íd.* Además, esto no constituye una oferta que puede ser retirada si la otra parte no la acepta, como sucede en otros contextos donde se intenta negociar un posible contrato de transacción. *Íd.* El razonamiento de esta decisión se fundamentó en que el ajuste de una reclamación no se produce con la intención de finalizar una controversia **sino más bien se trata de una obligación prexistente proveniente de una ley**. *Íd.*

En lo pertinente, en *Feliciano Aguayo v. Mapfre Panamerican Insurance Company*, 207 DPR 138 (2021), concluye el Tribunal Supremo que cuando la aseguradora envía una oferta razonable al asegurado, la misma constituye un estimado de los daños y que dicha oferta razonable se considera "un reconocimiento de deuda al menos en cuanto a las sumas ofrecidas como ajuste". *Íd.*, pág. 165.

### C. La Liquidez de la Deuda y los Intereses por Mora

De otra parte, el Art. 1123 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3173, vigente al momento de las obligaciones contraídas por las partes, disponía que "cuando la deuda tuviere

una parte líquida y otra ilíquida, podrá exigir el acreedor y hacer el deudor el pago de la primera sin esperar a que se liquide la segunda". Una deuda es líquida cuando la cuantía de dinero debida es cierta y determinada. *Ramos y otros v. Colón y otros,* 153 DPR 534, 546 (2001). La deuda se considera exigible cuando la obligación no está sujeta a ninguna causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950).

El Artículo 1053 del Código Civil de 1930, 31 LPRA 3017ante, dispuso expresamente lo siguiente:

> **Incurren en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación.**
>
> No será, sin embargo, necesaria la intimación del acreedor para que la mora exista:
>
> > (1) Cuando la obligación o la ley lo declaren así expresamente.
> >
> > (2) Cuando de su naturaleza y circunstancias resulte que la designación de la época en que había de entregarse la cosa o hacerse el servicio, fue motivo determinante para establecer la obligación.
>
> (Énfasis suplido).[15]

El cobro de intereses por mora está previsto en al artículo 1061 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3025 (derogado, 2020), donde se establece lo siguiente:

> Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.
>
> Se considerará como legal el interés que fije la Oficina del Comisionado de Instituciones Financieras; disponiéndose que los intereses se computarán de forma simple y no compuesta.[16]

El Artículo 1053 del Código Civil de 1930, 31 LPRA sec, 3017 (derogado en 2020), dispone que la mora comienza para el obligado a entregar o hacer alguna cosa desde que el acreedor le exija judicial o extrajudicialmente el cumplimiento de su obligación. Por

---

[15] El Artículo 1159 del Código Civil de 2020, 31 LPRA sec. 9311 establece que "[l]a persona obligada a entregar o hacer alguna cosa incurre en mora desde que el acreedor le exige, judicial o extrajudicialmente, el cumplimiento de su obligación.
[16] Corresponde al Artículo 1169 del Código Civil de 2020, 31 LPRA sec. 9333.

excepción, no será necesaria la intimación del acreedor cuando la obligación o la ley así lo declaren, o cuando de la naturaleza y circunstancias de la obligación resulte que la designación de la época en que debía entregarse la cosa o hacerse el servicio, fue un motivo determinante para establecer la obligación.

Cónsono con lo antes expuesto, el Tribunal Supremo de Puerto Rico aclaró que para que proceda la imposición de intereses de esta naturaleza en el cumplimiento de una obligación, es necesario que concurran los siguientes requisitos:

> (1) una obligación de dar o hacer; (2) **que el acreedor requiera el cumplimiento al deudor judicial o extrajudicialmente**; (3) que la obligación sea exigible y líquida, y esté vencida; (4) que el retraso sea imputable al deudor, y (5) que el retraso en cumplir se haya producido por la culpa del deudor. Consejo Titulares v. MAPFRE, 2024 TSPR 140, 215 DPR ___ (2024) (citando a L. Díez Picazo y A. Gullón, Sistema de Derecho Civil, 11ma ed., Madrid, Ed. Tecnos, 2023, Volumen II, Tomo 1, págs. 191-192. J. Castán Tobeñas, Derecho Civil Español, Común y Foral, 17ma ed., Madrid, Ed. Reus S.A., 2008, Tomo III, págs. 238-240) (Énfasis nuestro). *Asociación de Salud Primaria de Puerto Rico Inc., y otros v. Estado Libre Asociado de Puerto Rico y otros v. Estado Libre Asociado de Puerto Rico y otros*, 2025 TSPR 75, 216 DPR___ (2025), pág. 13.

**III.**

Es preciso destacar que MAPFRE no cuestiona el pago de la suma de $447,742.57 como pago parcial de la reclamación tras el ajuste del estimado de daños realizado, según determinado en la *Sentencia Parcial* objeto de Apelación, sino la imposición de intereses por mora sobre dicha suma. Es la contención principal de la Apelante que no tiene la obligación de pagar intereses por mora sobre el ajuste del estimado de daños porque los Apelados no lo solicitaron, por lo que no se configuraron los requisitos necesarios que establece nuestro ordenamiento jurídico para que procediera la imposición de intereses por mora. Argumenta que al no hacerse la interpelación para el pago del ajuste no se cumplieron con los

requisitos para que procedieran los intereses por mora sobre dicha suma.

Una vez la aseguradora resuelve la reclamación y emite un ajuste dentro de los noventa (90) días que exige el Artículo 27.162 del Código de Seguros-el ajuste se convierte en una **cantidad líquida** que la aseguradora tiene la obligación de ofrecer y pagarle al asegurado, sin condicionarla a la renuncia de los reclamos legítimos que permanezcan. 26 LPRA Sec.2716*b. Véase,* además, Artículo. 27.161 (19) del Código de Seguros, 26 LPRA sec.2716 *a.*

En lo pertinente, el Artículo 1123 del Código Civil de 1930, aplicable a los hechos del caso que nos ocupa, dispuso que "cuando la deuda tuviere una parte líquida y otra ilíquida, podrá exigir el acreedor y hacer el deudor el pago de la primera sin esperar a que se liquide la segunda". 31 LPRA sec. 3173.[17]

Cuando las aseguradoras realizan un ajuste de daños a propiedades aseguradas, tales sumas constituyen **deudas líquidas y exigibles** que deben ser pagadas sin dilación en beneficio del asegurado.  En el caso que nos ocupa, mediante el ajuste realizado, MAPFRE **reconoció que adeudaba** a los Apelados la suma de $447,742.57. Dicho ajuste, conforme a la normativa jurisprudencial vigente, constituye un reconocimiento de deuda por parte de MAPFRE.

Sin embargo, para que procedan los intereses por mora es preciso que concurran varios requisitos. En primer lugar, es un hecho incontrovertido que, si bien los Apelados no hicieron a MAPFRE un requerimiento de pago extrajudicial de la suma de $447,742.57, objeto del ajuste de la Apelante, si solicitaron, mediante la presentación de la *Demanda* el pago de la deuda por el mismo concepto. Ello se desprende de las propias alegaciones de la

---

[17] El Artículo 1123 del derogado Código Civil de 1930, corresponde actualmente al Artículo 1119 del Código Civil de 2020.

*Demanda* que dan origen a este pleito, pues en esta, los Apelados manifestaron que "MAPFRE ha rehusado pagar **más de $447,743** por concepto de las pérdidas incurridas por las Villas Aseguradas, cuya partida constituye una fracción de la cantidad adeudada bajo la póliza y del costo para reparar el daño que el Huracán María le causó a la propiedad de Villas Aseguradas" (Énfasis suplido).[18] Cabe destacar que MAPFRE, en su *Contestación a Demanda* negó que fuera acreedora de dicha cantidad.[19] Asimismo, la solicitud de *Sentencia Sumaria Parcial* instada por los Apelados el 13 de diciembre de 2024,[20] evidencia la cual solicitud de pago presentada por el Apelante, a la cual se opuso MAPFRE el 2 de enero de 2025, por virtud de *Oposición a Moción de Sentencia Sumaria Parcial* en la cual se negó a pagar.[21] Obsérvese que estos hechos arrojan luz sobre el momento en que reclamó el monto en cuestión en el presente pleito.

Lo anterior es relevante, pues, "los intereses por mora deben calcularse a partir del momento en que la parte acreedora exige el cumplimiento de la obligación, ya sea por la vía judicial o la extrajudicial". *Asociación de Salud Primaria de Puerto Rico Inc., y*

---

[18] Véase, Apéndice del Recurso, pág. 3, Alegación número 10 de la *Demanda.*
[19] Concretamente, MAPFRE alegó lo siguiente:

> Se niegan las alegaciones del párrafo diez (10) de la Demanda. De conformidad con la Carta Normativa 2012-145-D del 12 de julio de 2012, las aseguradoras están justificadas en exceder el término de noventa (90) días para resolver todas las reclamaciones que surgen de un evento catastrófico. MAPFRE PRAICO no responde automáticamente por los daños y/o remedios reclamados por la parte demandante. Luego del paso del huracán María, el Condominio sometió una reclamación. De inmediato, MAPFRE PRAICO acusó recibo de la reclamación y le asignó el número 2017127465. MAPFRE PRAICO inspeccionó, investigó, estimó los daños, y el 27 de diciembre de 2018 notificó un ajuste por la cuantía de $447,742.57 en pago de reclamación por daños ocasionados por el huracán María. El Condominio **otorgó un acuerdo** de cesión indebida de sus derechos bajo la Póliza a favor de Attenure, sin el consentimiento expreso de MAPFRE PRAICO. Ante dicho incumplimiento de la Póliza, MAPFRE PRAICO está exenta de obligación alguna en torno a la parte demandante. MAPFRE PRAICO no responde automáticamente por los daños y/o remedios reclamados por la parte demandante.

Véase, Apéndice del Recurso, pág. 22.
[20] Véase, Apéndice del Recurso, págs. 54-74.
[21] Véase, Apéndice del Recurso, pág. 445-464.

*otros v. Estado Libre Asociado de Puerto Rico y otros v. Estado Libre Asociado de Puerto Rico y otro*, supra, pág. 20. El que la aludida suma sea líquida desde la fecha del ajuste no implica que automáticamente procedan los intereses por mora, pues esta figura jurídica no se activa automáticamente y la excepción al requisito de interpelación opera cuando la ley o la obligación lo declara así expresamente.

A esos fines, enfatizamos que, como cuestión de derecho, ni en el Código de Seguros ni en la obligación contraída por las partes está dispuesto que procedan los intereses por mora desde la fecha del ajuste realizado por la aseguradora, por la suma objeto del ajuste o estimado. Por lo tanto, se debe tomar como punto de partida, la fecha de la presentación de la demanda ya que fue en ese momento cuando que tuvo lugar el requerimiento de cumplimiento con la obligación por la vía judicial.

Con estos antecedentes, concluimos que no incidió el foro primario al conceder los intereses por mora, pues en el presente caso, se han satisfecho todos los requisitos que exige nuestro ordenamiento para que proceda la imposición de intereses por dicho concepto. No obstante, es necesario aclarar que los aludidos intereses por mora se deben computar a partir de la fecha en que las Apeladas interpusieron su demanda hasta la fecha en la que el foro primario declaró *Ha Lugar* la reclamación de la cuantía en controversia. Véase, *Asociación de Salud Primaria de Puerto Rico Inc., y otros v. Estado Libre Asociado de Puerto Rico y otros v. Estado Libre Asociado de Puerto Rico y otro*, supra, pág. 21.

**IV.**

Por los fundamentos anteriormente expuestos, los cuales se hacen formar parte de esta *Sentencia*, modificamos la *Sentencia Parcial* apelada a los únicos fines de aclarar que los intereses por mora deben calcularse desde la fecha en que se presentó la

Demanda hasta la fecha en que se emitió la *Sentencia Parcial* apelada. Así modificada, **confirmamos**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones