Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| María De Los Ángeles López Rivas; María Ivette González López, Luis Fernando Figueroa Marcano y la Sociedad Legal De Gananciales compuesta entre sí; Elizabeth González López, Javier Calixto Torres Y la Slg; Ángel González López, su esposa Raquel García Trinidad y la Slg Compuesta entre sí.<br><br>**Demandantes-Recurridos**<br><br>V.<br><br>Alexa Ivelisse Ortiz H/N/C Maggys Garden Home; John Doe y la Sociedad Legal De Gananciales compuesta por ambos<br><br>**Demandados-Recurridos**<br><br>UNIVERSAL INSURANCE COMPANY<br><br>**Demandado-Peticionario** | TA2026CE00167 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm. BY2024CV01997<br><br>Sobre:<br>Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Hernández Sánchez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2026.

El 12 de febrero de 2026, Universal Insurance Company (Universal o la peticionaria) compareció ante nos mediante una *Petición de Certiorari* y solicitó la revisión de una *Resolución* que se

emitió el 5 de diciembre de 2025 y se notificó el 9 de diciembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Moción de Sentencia Sumaria Parcial* que presentó Universal.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y **revocamos** el dictamen recurrido.

I.

El 12 de abril de 2024, la Sra. María De Los Ángeles López Rivas; la Sra. María Ivette González López, su esposo, el Sr. Luis Fernando Figueroa Marcano y la Sociedad Legal De Gananciales compuesta entre ambos; la Sra. Elizabeth González López, su esposo, el Sr. Javier Calixto Torres y la Sociedad Legal de Gananciales compuesta por ambos; el Sr. Ángel González López, su esposa, la Sra. Raquel García Trinidad y la Sociedad Legal de Gananciales compuesta entre ambos (en conjunto, los demandantes-recurridos) presentaron una *Demanda* sobre daños y perjuicios contra la Sra. Alexa Ivelisse Ortiz H/N/C Maggys Garden Home; John Doe y la Sociedad Legal De Gananciales compuesta por ambos (en conjunto, demandados-recurridos) y Aseguradora X.[1] Alegaron que, el Sr. Ángel González Rodríguez (señor González), de 77 años y con Alzheimer, fue dado de alta el 7 de junio de 2023 y trasladado por sus hijos a un hogar de cuido que afirmaba aceptar pacientes con su condición.

Esbozaron que, durante el proceso de admisión, el personal del hogar dejó al señor González sin supervisión y este se levantó, caminó por un pasillo, atravesó un portón que estaba abierto y sin seguro, y se lanzó desde una azotea de un segundo piso, falleciendo en presencia de sus familiares. A tales efectos, argumentaron que la

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

negligencia del hogar, al incumplir los protocolos de seguridad, ocasionó la muerte del señor González y les provocó daños y sufrimientos emocionales, por lo cual reclamaron indemnización por dichos daños. Asimismo, expresaron que la aseguradora respondía por los daños causados por su asegurada, Maggys Garden Home, conforme a la póliza expedida a su favor y en beneficio de terceros reclamantes. En consecuencia, solicitaron al TPI que declarara Ha Lugar la *Demanda* y condenara a los demandados al pago total de $325,000.00, más costas y honorarios de abogado.

En respuesta, el 19 de agosto de 2024, la demandada-recurrida presentó su alegación responsiva.[2] En esta, se limitó a negar la mayoría de las alegaciones formuladas en su contra; a su vez, admitió mantener vigente una póliza de responsabilidad con Universal. Posteriormente, el 25 de marzo de 2025, los demandantes-recurridos enmendaron la *Demanda* con el único fin de incluir a Universal como parte demandada.[3]

Así las cosas, el 31 de julio de 2025, Universal presentó una *Moción de Sentencia Sumaria Parcial*.[4] Expuso que emitió una póliza de responsabilidad general comercial (CGL) a favor de Maggys Garden Home y su dueña, la Sra. Alexza Ortiz Maldonado — identificada en la demanda como Alexa Ivelisse Ortiz—. Sin embargo, sostuvo que dicha póliza excluía expresamente de cubierta los servicios profesionales, incluyendo los de cuido, atención, supervisión, seguridad y servicios médicos prestados por el hogar y sus empleados, así como la omisión en prestarlos.

Argumentó que la demanda enmendada se fundamentaba precisamente en alegadas omisiones en el deber de atención, supervisión y seguridad adecuada hacia el señor González, lo cual,

---

[2] *Véase*, Entrada Núm. 10, SUMAC TPI.
[3] *Véase*, Entrada Núm. 13, SUMAC TPI.
[4] *Véase*, Entrada Núm. 20, SUMAC TPI.

a su juicio, constituía servicios profesionales dentro del contexto de un hogar de cuido para personas de edad avanzada con condiciones mentales. Por ello, concluyó que tales alegaciones estarían comprendidas dentro de la exclusión de servicios profesionales reconocida en la póliza, conforme a la doctrina expuesta en *Viruet et al. v. SLG Casiano Reyes*, 194 DPR 271 (2015).

Añadió que no existía controversia sobre los hechos alegados ni sobre los términos y exclusiones de la póliza, por lo que el asunto se limitaba a aplicar la póliza a los hechos. Al hacerlo, concluyó que los daños reclamados estaban excluidos de cubierta, razón por la cual solicitó la desestimación de la reclamación en su contra, con imposición de costas, gastos y honorarios de abogado.

En respuesta, el 20 de agosto de 2025, la parte demandante-recurrida presentó una *Oposición a Sentencia Sumaria Parcial*.[5] Sostuvo que el caso versaba sobre los daños, sufrimientos y angustias mentales sufridos por los demandantes a raíz de la muerte de su padre, ocasionada por la negligencia del hogar de cuido al mantener un portón abierto y sin medidas de seguridad ni supervisión que evitaran el fatal desenlace.

Adujo que la moción dispositiva de Universal se fundamentaba en un asunto impertinente, al invocar una exclusión por servicios profesionales que, según alegan, no guarda relación con los hechos del caso. Señaló que la reclamación no se basaba en la prestación o falta de prestación de servicios profesionales, sino en la negligencia al dejar un área sin seguridad adecuada. En consecuencia, argumentó que la aseguradora pretendía la desestimación apoyándose en planteamientos ajenos a la controversia, por lo que dicha defensa resultaba inaplicable a los hechos que originaron la reclamación.

---

[5] *Véase*, Entrada Núm. 25, SUMAC TPI.

Por su parte, ese mismo día, a saber, el 20 de agosto de 2025, la parte demandada-recurrida presentó su *Moción Informativa y en Réplica con Relación a Moción de Sentencia Sumaria Parcial.*[6] Indicó que la moción presentada por Universal se fundamentaba en alegaciones que aún estaban en controversia y no en hechos probados. Señaló que en su contestación a la demanda negó los hechos imputados, incluyendo la alegada negligencia de su personal, por lo que resultaba improcedente determinar en esta etapa la inexistencia de cubierta sin que mediara descubrimiento de prueba, evidencia ni testimonios que establecieran cómo ocurrieron los hechos.

Argumentó que era prematuro concluir que la supuesta negligencia provino de servicios profesionales o de su omisión, ya que no se había demostrado que los hechos ocurrieran según alegados ni que el señor González estuviera bajo el cuidado exclusivo del hogar o de sus empleados. Enfatizó que la determinación de responsabilidad y la naturaleza de los actos alegados requerían la evaluación de la prueba en juicio.

Por otro lado, afirmó que adquirió y mantuvo vigente una póliza de seguro para su negocio, habiendo informado correctamente el tipo de servicios que ofrecía, y que, según su entendimiento y lo representado al momento de la venta, la póliza proveía cubierta para los hechos alegados. Añadió que las pólizas debían interpretarse de forma integral y, en caso de duda, a favor del asegurado, evitando interpretaciones que permitieran a la aseguradora evadir su responsabilidad.

En virtud de lo anterior, solicitó que el TPI denegara la solicitud de Sentencia Sumaria Parcial, ya que, a su juicio, existían controversias de hechos materiales que debían dilucidarse en juicio,

---

[6] *Véase*, Entrada Núm. 26, SUMAC TPI.

y que la aseguradora respondiera conforme a las obligaciones contractuales asumidas bajo la póliza vigente al momento de los hechos alegados.

Así las cosas, el 22 de agosto de 2025, Universal presentó su *Réplica a "Oposición a Sentencia Sumaria Parcial" y "Moción Informativa y en Réplica con Relación a Moción de Sentencia Sumaria Parcial".*[7] En primer lugar, señaló que tanto los demandantes-recurridos como los demandados-recurridos incumplieron con los requisitos de la Regla 36.3(b), (c) y (d) de Procedimiento Civil al oponerse a la sentencia sumaria, ya que no identificaron específicamente los hechos propuestos que alegadamente estaban en controversia ni presentaron evidencia admisible para refutarlos. Sostuvo que conforme a *SLG Zapata- Rivera v. J.F. Montalvo,* 189 DPR 414, 432-433 (2013), la parte opositora tenía el deber de controvertir cada hecho con referencia específica a la evidencia; de no hacerlo, los hechos podían considerarse no controvertidos. Por ello, solicitó que los hechos incluidos en su moción se tuviesen por admitidos.

Asimismo, argumentó que las oposiciones se fundamentaban erróneamente en la supuesta existencia de controversias fácticas y en la ausencia de descubrimiento de prueba, cuando tales planteamientos, a su juicio, eran irrelevantes para resolver el asunto de cubierta. Expresó que, conforme a la jurisprudencia, la determinación de cubierta se basaba en las alegaciones de la demanda y no en la veracidad final de los hechos ni en la responsabilidad del asegurado. En vista de ello, indicó que la demanda enmendada describía daños derivados de la supuesta omisión del hogar de cuido en su deber de atención, seguridad y supervisión hacia el señor González, lo cual encuadraba dentro de

---

[7] *Véase,* Entrada Núm. 28, SUMAC TPI.

servicios profesionales excluidos de la póliza de responsabilidad comercial general emitida a Maggys Garden Home.

Por último, sostuvo que la atención y supervisión de personas de edad avanzada con condiciones mentales constituía un servicio profesional, por lo que cualquier omisión en su prestación quedaba expresamente excluida de cubierta, conforme a la doctrina expuesta en *Viruet et al. v. SLG Casiano Reyes*, supra. En consecuencia, reafirmó que las alegaciones de la demanda, las exclusiones de la póliza y la jurisprudencia aplicable demostraban claramente la ausencia de cubierta, por lo que solicitó la desestimación de la causa de acción en su contra.

Posteriormente, el 27 de agosto de 2025, la parte demandante-recurrida presentó una *Dúplica a Réplica*.[8] En síntesis, sostuvo que existían hechos esenciales y materiales en controversia que impedían la adjudicación del caso mediante sentencia sumaria. En particular, argumentó que los hechos del caso no guardaban relación con servicios profesionales, planteamiento central de Universal para eximirse de responsabilidad bajo la póliza. Además, alegó que estaba en controversia la aplicabilidad de la póliza y que la codemandada, la Sra. Alexa Ivelisse Ortiz, sostuvo que la cubierta adquirida obligaba a Universal a brindarle representación y protección.

Finalmente, expuso que, como cuestión de derecho, el tribunal no debía acoger la solicitud de la aseguradora. Específicamente expresó que la sentencia sumaria era improcedente cuando existían hechos materiales en disputa o cuando el derecho aplicable así lo exigía, así como diversa jurisprudencia que reafirmaba que la presencia de controversias sustanciales impedía resolver el caso sin juicio. A tales efectos, reiteró que la solicitud de

---

[8] *Véase*, Entrada Núm. 31, SUMAC TPI.

sentencia sumaria parcial y la réplica presentada por Universal carecían de apoyo en el ordenamiento jurídico y debían ser denegadas.

Evaluados los escritos de las partes, el 5 de diciembre de 2025, el TPI dictó una *Resolución* que se notificó el 9 de diciembre de 2025.[9] En primer lugar, formuló las siguientes determinaciones de hechos:

1. La existencia de una póliza de seguro en favor de Alexa por parte de Universal para cubrir los daños, sufrimientos y angustias mentales por negligencia de la aseguradora Alexa.

2. Maggys Garden Home es un hogar de cuido para personas de edad avanzada.

3. La demanda es sobre daños, sufrimientos y angustias mentales por la muerte del esposo y padre, respectivamente, de los Velázquez y no versa sobre alegaciones de daños a la propiedad.

Luego, expuso que, tras evaluar la totalidad del expediente y a la luz del derecho aplicable, no procedía dictar sentencia sumaria debido a que los siguientes hechos estaban en controversia:

1. "Las alegaciones de la demanda enmendada por la cual se reclaman daños están basadas en la supuesta omisión o negligencia del hogar de cuido Maggys Garden Home en el deber de atención, seguridad y supervisión brindado al señor el señor Ángel González Rodriguez (QPD) de 77 años de edad y con problemas de salud mental".

2. Universal fue traída al pleito bajo la creencia y alegación de haber emitido una póliza para Maggys Garden Home y/o su dueña identificada en la demanda como la codemandada, Sra. Alexa Ivelisse Ortiz, que asegura los daños reclamados.

3. Universal emitió a favor de Maggys Garden Home y/o su dueña nombrada Alexza Ortiz Maldonado la póliza de responsabilidad general comercial número 09-560-000679600-2, con vigencia del 2 de febrero de 2023 al 2 de febrero de 2024.

4. Dicha póliza no ofrece cubierta por servicios profesionales rendidos de cualquier tipo y naturaleza, o la falta de haberlos rendidos.

---

[9] *Véase*, Entrada Núm. 33, SUMAC TPI.

5. El alcance de las cubiertas de la póliza de seguros.

6. Las alegaciones de la demanda, las cuales fueron negadas por Alexa en su contestación a demanda.

7. Las cartas cursadas por Universal a Alexa sobre su intención y tiempo.

Así pues, declaró No Ha Lugar la *Moción de Sentencia Sumaria Parcial* que presentó Universal y ordenó la continuación de los procedimientos.

En desacuerdo, el 23 de diciembre de 2025, la peticionaria presentó una *Solicitud de Reconsideración*.[10] En esta, sostuvo que no existía controversia material que impidiera dictar sentencia sumaria a su favor. Argumentó que ningún descubrimiento de prueba alteraría ciertos hechos objetivos, a saber: que Maggys Garden Home operaba como un hogar dedicado al cuido de adultos mayores, incluyendo personas con condiciones mentales; que el señor González se encontraba bajo su cuidado; y que la póliza de responsabilidad general comercial emitida por Universal contenía una exclusión clara por servicios profesionales.

Invocando la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47, planteó que la *Resolución* debía revisarse ya que un análisis correcto de la póliza y del derecho aplicable demostraba la ausencia de cubierta. Señaló que, conforme al Código de Seguros y a la jurisprudencia interpretativa, la obligación de cubierta se determinaba a partir de las alegaciones de la demanda y del texto de la póliza, incluyendo sus exclusiones. Así pues, indicó que cuando una exclusión aplicaba de forma clara, la aseguradora no respondía por los daños reclamados.

Reiteró que las reclamaciones surgían de alegadas omisiones en la atención, supervisión y seguridad brindadas a un residente de

---

[10] *Véase*, Entrada Núm. 34, SUMAC TPI.

edad avanzada, funciones que constituían servicios profesionales dentro del contexto de un hogar de cuido. Por ello, expresó que la exclusión de servicios profesionales en la póliza CGL impedía la cubierta, conforme a lo resuelto en *Viruet et al. v. SLG Casiano Reyes*, supra.

Asimismo, planteó que la veracidad de los hechos alegados era irrelevante para efectos de determinar cubierta, pues lo determinante eran las alegaciones formuladas en la demanda. Añadió que las oposiciones presentadas no cumplieron con los requisitos procesales para controvertir hechos materiales, que la carta de denegación de cubierta constituía evidencia pertinente y que el descubrimiento de prueba no alteraría la aplicabilidad de la exclusión. A su juicio, la resolución recurrida parte de la premisa errónea de que existen controversias materiales sobre la póliza.

Finalmente, en virtud de lo antes expresado, solicitó que se declarara con lugar la sentencia sumaria parcial y se desestimara la reclamación en su contra, al entender que los daños alegados estaban excluidos de cubierta bajo los términos de la póliza.

Atendida la solicitud de reconsideración, el 12 de enero de 2026, el TPI emitió una *Orden* que se notificó el 13 de enero de 2026 declarándola No Ha Lugar.[11] Aún inconforme, el 12 de febrero de 2026, la peticionaria presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE SENTENCIA SUMARIA PARCIAL DE UNIVERSAL INSURANCE COMPANY, AUN CUANDO LA PARTE DEMANDANTE Y LOS CODEMANDADOS EN SUS OPOSICIONES NO CONTROVIRTIERON LOS HECHOS Y DERECHO APLICABLE SOMETIDOS EN LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL.**
>
> **ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL NO DAR CUMPLIMIENTO A LA REGLA 36.3 DE PROCEDIMIENTO CIVIL.**

---

[11] *Véase*, Entrada Núm. 35, SUMAC TPI.

**ERRÓ EL HONORABLE TRIBUNAL Y ABUSÓ DE SU DISCRECIÓN AL HACER CASO OMISO AL PRECEDENTE Y JURISPRUDENCIA INTERPRETATIVA QUE AFIRMA Y SOSTIENE LA POSICIÓN DE UNIVERSAL INSURANCE COMPANY.**

Atendido el recurso, el 17 de febrero de 2026, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 4 de marzo de 2026, para presentar su postura en cuanto al recurso. Oportunamente, la demandada-recurrida presentó su *Alegato de la Parte Recurrida* [...] y negó que el TPI cometiera los errores que la peticionaria le imputó. La parte demandante-recurrida no presentó su postura en cuanto al recurso. Sin embargo, con el beneficio de la comparecencia de la peticionaria y la demandada-recurrida, procedemos a resolver el asunto ante nos. *Veamos.*

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, pág. 63, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra*, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

**-B-**

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, *supra,* se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los

hechos no controvertidos. *Roldan Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018).

Es menester destacar que, solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012). Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. Íd. Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una cuestión que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Aponte Valentín V. Pfizer Pharm. et al., LLC,* 208 DPR 263, 277 (2021).

La Regla 36.2 de Procedimiento Civil, *supra,* permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Mun. de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Por su parte, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al., supra,* pág. 677. Por el contrario, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto

que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. *SLG Zapata- Rivera v. J.F. Montalvo*, supra, pág. 432. Específicamente, la Regla 36.3 de Procedimiento Civil, *supra,* expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria. Al amparo de dicha regla, la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra*, 186 DPR 713, 757 (2012).

Ahora bien, según *Verá et al. v. Dr. Bravo*, 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el TPI al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Íd. Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al TPI. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100*,* 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del TPI en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el

expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

**-C-**

En Puerto Rico, el negocio de seguros está investido de un alto interés público, por ello ha sido reglamentado extensamente por el Estado. *Rivera, Lozada v. Universal,* 214 DPR 1007, 1024 (2024). Ello obedece a la complejidad, la importancia y el efecto que tiene nuestra economía en la sociedad. Íd. La Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como *Código de Seguros de Puerto Rico,* 26 LPRA sec. 101 *et seq.* (Código de Seguros), y el Código Civil –de manera supletoria– son las leyes que rigen las prácticas y requisitos de la industria de seguros. *Natal Cruz v. Santiago Negrón et al.,* 188 DPR 564, 575 (2013).

El contrato de seguros se define como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". Artículo 1.020 del Código de Seguros, 26 LPRA sec. 102. La relación entre una aseguradora y su asegurado es de naturaleza contractual y se rige por lo pactado en el contrato de seguro. *López v. Atlantic Southern Ins. Co.,* 158 DPR 562, 568 (2003). Los términos que se encuentran pactados en el contrato de seguros se encuentran por escrito en la póliza. *San Luis*

*Center Apts. et al v. Triple-S*, 208 DPR 824, 832 (2022). De este modo, "el contrato de seguro deberá interpretarse a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125; *Carrasquillo Pérez v. CSM et al.*, 214 DPR 1033, 1050 (2024).

Ahora bien, los términos de los contratos de seguro se consideran claros cuando utiliza un lenguaje especifico, sin que deje lugar a dudas o ambigüedades. *San Luis Apartments v. Triple-S Propiedad*, supra, pág. 832. Así pues, en ausencia de ambigüedad, se estará al sentido literal de sus palabras por lo que las partes estarán obligadas a cumplir con sus cláusulas y su contenido será ley entre las partes. Íd. Esto, sin perder de perspectiva que el contrato de seguros constituye uno de adhesión, por lo que cualquier cláusula dudosa o ambigua debe interpretarse liberalmente a favor del asegurado. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1021 (2020). Dentro de este marco interpretativo, al examinar el alcance de la protección que confiere una póliza, resulta indispensable considerar las cláusulas de exclusión mediante las cuales la aseguradora delimita su obligación, al excluir de la cubierta determinados eventos, riesgos o contingencias. Íd.

Si bien en nuestro ordenamiento jurídico las cláusulas de exclusión no se favorecen y, por ello, se interpretan de manera restrictiva en contra del asegurador, lo cierto es que cuando dichas exclusiones están redactadas en términos claros y específicos, no puede imponerse responsabilidad a la aseguradora por aquellos riesgos que han sido expresamente exceptuados. *Viruet et al. v. SLG Casiano Reyes*, supra, pág. 279.

**-D-**

En *Viruet et al. v. SLG Casiano-Reyes,* supra, el Tribunal Supremo evaluó si procedía desestimar una demanda de daños y perjuicios contra una aseguradora que había expedido una póliza de responsabilidad comercial general a un centro de cuido de envejecientes. La póliza incluía una cláusula de exclusión por servicios profesionales. El caso surgió cuando una paciente con movilidad limitada, bajo el cuidado del centro, ingirió fragmentos de plástico que le provocaron una obstrucción intestinal y requirieron su hospitalización. Sus familiares demandaron al centro alegando negligencia al no brindarle el cuidado adecuado ni velar por su seguridad.

La aseguradora solicitó la desestimación de la reclamación en su contra al sostener que los hechos alegados estaban excluidos de la cubierta, por surgir de la prestación de servicios profesionales o de salud. Por su parte, los familiares se opusieron argumentando que su reclamación no se basaba en negligencia médica, sino en la falta de supervisión y en la omisión de proteger la seguridad de la paciente.

Ante este cuadro, el Tribunal Supremo debía determinar si, conforme a las exclusiones contenidas en la póliza, existía cubierta para los hechos alegados en la demanda. Al exponer la normativa aplicable a los contratos de seguros, el Tribunal destacó una distinción relevante para resolver la controversia. Íd., págs. 279-280. Esta lee como sigue:

> El seguro de responsabilidad civil o pública, como es el caso del seguro de Responsabilidad Comercial General, protege al asegurado ante un tercero que ha sufrido daños por su causa. *Integrand Assurance v. CODECO et al.,* 185 DPR 146 (2012). "[E]l asegurador se compromete, conforme a las condiciones estipuladas en el contrato, a indemnizar a un tercero por aquellos daños y perjuicios que le ha causado el asegurado". *Maderas Tratadas v. Sun Alliance et al.,* supra, pág. 900.

> Existe otra categoría de pólizas, denominadas de "Responsabilidad Profesional", que protegen al asegurado "contra la responsabilidad legal de éste por los daños o lesiones causadas a terceras personas como consecuencia del rendimiento negligente de sus servicios profesionales". *Díaz Ayala et al. v. E.L.A.,* 153 DPR 675, 690 (2001). Como regla general, las pólizas de responsabilidad pública comercial no cubren reclamaciones basadas en servicios profesionales. Véanse: B.R. Ostrager y T.R. Newman, *Handbook on Insurance Coverage Disputes,* 10ma ed., Nueva York, Aspen Law & Business, 2000, Sec. 7.02[b][6], pág. 319; S.T. Devenney y G. Bundschuh, *Is the Line Blurring between General and Professional Liability?*, 29 Constr. Law 15 (Spring, 2009). Los riesgos concernientes a estos servicios típicamente se atienden a través de seguros de responsabilidad profesional. *Tri-Etch, Inc. v. Cincinnati Ins. Co.,* 909 N.E.2d 997, 1002 (Ind. Sp. Ct. 2009). Véase, además, 4 *New Appleman on Insurance Law Library Edition*, Sec. 25.01[1], págs. 25-6 y 25-7 (Rel. 11/9/2014).
>
> En el campo de seguros, en ocasiones resulta difícil distinguir entre una reclamación civil basada en negligencia y una asentada en responsabilidad profesional, a fin de determinar si la causa de acción surge como resultado de una conducta u omisión asociada con la prestación de servicios profesionales.

Más adelante, el Tribunal Supremo abordó qué constituye un "servicio profesional" para fines de una cláusula de exclusión en una póliza de seguro. Señaló que, cuando la póliza no define ese término, debe recurrirse a su acepción jurídica. Íd., págs. 280. En ese contexto, un servicio profesional supone una vocación u ocupación que requiere conocimientos especializados, destrezas particulares o preparación técnica, y cuyas habilidades son predominantemente intelectuales o mentales, más que físicas o manuales. Íd. págs. 280-281.

Además, el Tribunal explicó que el carácter "profesional" de un servicio implica el uso de discernimiento basado en estudios formales o en conocimiento especializado. Íd., pág. 281. En otras palabras, depende de si la persona actúa empleando el juicio, ingenio y adiestramiento propios de un profesional. Íd. Por ello, quedan fuera de esa categoría las tareas meramente físicas, manuales o clericales, así como las alegaciones de simple

negligencia que no surgen del ejercicio de destrezas especializadas. Íd. Asimismo, se aclaró que la exclusión por servicios profesionales no se limita a profesiones tradicionales como la medicina, la abogacía, la arquitectura o la ingeniería, sino que puede extenderse a otras ocupaciones que requieran conocimientos técnicos o especializados. Íd.

Al aplicar estos principios a los hechos del caso, el Tribunal Supremo concluyó que las alegaciones se centraban en la deficiencia del cuidado brindado a la paciente durante su estadía en el centro de cuido, lo que le permitió acceso al material plástico que posteriormente ingirió. Íd., pág. 284.

Por último, el Tribunal Supremo determinó que:

A base de lo discutido anteriormente, entendemos que la negligencia señalada en la Demanda está cimentada en la omisión de servicios especializados que el Centro venía obligado a proveer a la [paciente]. Esta obligación implica necesariamente, limitar todo riesgo potencial de daño a través de una supervisión profesional adecuada. Para velar por su bienestar y seguridad, función que, bajo las circunstancias particulares de este caso, cualifica como servicios profesionales.

Por consiguiente, y por los fundamentos antes expresados, concluimos que la demanda invoca una violación a deberes profesionales. La reclamación surge debido a que el Centro no prestó los servicios especializados requeridos por la condición de la [paciente]. Esta omisión queda, por lo tanto, fuera de la cubierta, brindada en la póliza expedida por [la aseguradora] en función de la exclusión de servicios profesionales. Para efectos de este caso, el riesgo del cual se protege a los asegurados a través de la póliza en cuestión comprende únicamente aquellos daños que ocurran como consecuencia de una conducta negligente del personal del Centro, pero que surjan de actos u omisiones *independientes a los servicios profesionales de cuido y supervisión que la empresa viene obligada a brindar a los residentes [del Centro].* (Cursivas en el original). Íd., pág. 286.

### III.

Cuando se recurre de una determinación interlocutoria emitida por el TPI, este foro intermedio tiene discreción para expedir el recurso presentado ante su consideración. Así, luego de examinar el expediente y los argumentos esgrimidos por Universal, a la luz de

los criterios de la Regla 52.1 de Procedimiento Civil, *supra,* y de la Regla 40 del Tribunal de Apelaciones*, supra,* acordamos expedir el auto de *certiorari,* toda vez que nos encontramos ante una denegatoria de una moción de carácter dispositiva.

En el presente recurso, Universal impugnó la *Resolución* que el TPI emitió el 5 de diciembre de 2025 y notificó el 9 de diciembre de 2025, declarando No Ha Lugar su *Moción de Sentencia Sumaria Parcial.* Particularmente, en su primer señalamiento de error, Universal alegó que el TPI erró al denegar su solicitud de sentencia sumaria parcial a pesar de que la parte demandante-recurrida y la demandada-recurrida no controvirtieron los hechos ni el derecho aplicables en dicha moción. En su segundo señalamiento de error, argumentó que el TPI incumplió con la Regla 36.3 de Procedimiento Civil, *supra,* la cual regula el trámite y los requisitos para adjudicar una solicitud de sentencia sumaria. Por último, en su tercer señalamiento de error, expuso que el TPI erró y abusó de su discreción al ignorar el precedente y la jurisprudencia interpretativa aplicable que respaldan su posición jurídica.

Como es sabido, es norma reiterada que el mecanismo de sentencia sumaria, consagrado en la Regla 36 de Procedimiento Civil, *supra,* persigue adelantar una solución justa, rápida y económica de los pleitos, conforme al mandato rector de la Regla 1 de Procedimiento Civil, *supra.* Procede su concesión cuando de los documentos que obran en autos surge que no existe controversia real y sustancial sobre hechos esenciales y pertinentes y el derecho aplicable así lo justifica. *Roldán Flores v. M. Cuebas et al.*, supra*,* pág. 676; Regla 36.3(e) de Procedimiento Civil, *supra.*

Al revisar la concesión de una solicitud de sentencia sumaria, este Tribunal Apelativo examina el expediente de *novo* y aplica los mismos criterios que el TPI. *Verá et al. v. Dr. Bravo*, supra, págs. 334-335; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.

Nos corresponde, además, evaluar si la moción y su oposición cumplieron con los requisitos formales de la Regla 36.3 de Procedimiento Civil, *supra,* y determinar si existen hechos materiales en controversia o si, por el contrario, solo resta aplicar el derecho a hechos no disputados. *Rivera Matos et al. v. Triple-S et al.*, supra, pág. 1025.

En atención a lo anterior, cabe precisar que, la Regla 36.3 de Procedimiento Civil, *supra*, impone a la parte opositora el deber ineludible de controvertir específica y detalladamente cada hecho propuesto por el promovente, con referencia a evidencia admisible. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, págs. 432-433. No basta con descansar en las alegaciones de la demanda o en negaciones generales; la omisión en cumplir con esta carga conlleva que los hechos se tengan por admitidos.

Examinado el expediente, resolvemos que los demandantes-recurridos y los codemandados-recurridos no cumplieron cabalmente con los requisitos de la Regla 36.3 de Procedimiento Civil, *supra.* Sus oposiciones descansaron principalmente en la alegada existencia de controversias fácticas sobre la negligencia imputada y en la necesidad de descubrimiento de prueba. Sin embargo, no controvirtieron de forma específica, con evidencia admisible, los hechos relativos a la existencia, vigencia, clasificación y exclusiones de la póliza emitida por Universal, ni el contenido de las cláusulas de exclusión incluidas en los exhibits acompañados a la moción.

A la luz de lo antes expuesto y de un examen del expediente y la prueba documental presentada, damos por admitidos y determinamos que los siguientes hechos no están en controversia:

1. Las alegaciones de la Demanda Enmendada reclaman daños basados en la supuesta omisión o negligencia de Maggys Garden Home en el deber de atención, seguridad y supervisión brindado al señor Ángel González Rodríguez de 77 años y con

Alzheimer. *Véase*, párrafos 7-8, 10, y 12-17 del la Demanda Enmendada.

2. Maggys Garden Home es un hogar de cuido para personas de edad avanzada. *Véase,* párrafos 5 y 8 de la Demanda Enmendada.

3. Universal fue traída al pleito bajo la alegación de haber emitido una póliza que aseguraba a Maggys Garden Home y/o a su dueña por los daños reclamados. *Véase,* párrafos 6 y 18 de la Demanda Enmendada.

4. Universal emitió la póliza de responsabilidad general comercial número 09-560-000679600-2 a favor de Maggys Garden Home y/o su dueña Alexza Ortiz Maldonado, con vigencia del 2 de febrero de 2023 al 2 de febrero de 2024. *Véase,* Exhibit 1a y 1b de la *Moción de Sentencia Sumaria Parcial.*

5. Dicha póliza clasificó a Maggys Garden Home como una facilidad para el cuidado de la salud de personas de edad avanzada ("Health Care Facilities – homes for the aged (For-Profit)"). *Véase,* Exhibit 1a, pág. 5 de la *Moción de Sentencia Sumaria Parcial.*

6. Dicha póliza contiene una exclusión expresa por servicios profesionales rendidos de cualquier tipo y naturaleza, o por la falta de haberlos rendido, conforme a la forma CG 21 16 04 13, la cual excluye reclamaciones por "bodily injury" debidas a la prestación o falta de prestación de cualquier servicio profesional, aun cuando se alegue negligencia en la supervisión, contratación o monitoreo. Particularmente, esta lee como sigue:

EXCLUSION- DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY PART

SCHEDULE

1. ANY PROFESSIONAL SERVICES OF ANY KIND OR NATURE

   With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I Coverage B- Personal and Advertising Injury Liability:

   This insurance does not apply to "bodily injury", "property damage", or "personal and advertising

injury" due to the rendering or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service. *Véase*, Exhibir 1b, pág. 136 de la *Moción de Sentencia Sumaria Parcial.*

2. La póliza también incluye una exclusión específica por lesiones sufridas por cualquier persona que sea paciente o que se encuentre en los predios para recibir servicios de salud o cuido. Específicamente esta lee como sigue:

**EXCLUSION-PATIENT INJURY**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM.

SCHEDULE

*Description     and     Location     of     Premises:*

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement) This insurance does not apply to "bodily injury", "personal injury", or advertising injury" sustained by any person while:

1. Your patient; or

2. At premises shown in the Schedule (including while entering or leaving these premises) for the purpose of receiving health care or service. *Véase*, Exhibit 1b, pág. 179 de la *Moción de Sentencia Sumaria Parcial.*

3. Universal cursó cartas el 29 de mayo y 5 de junio de 2024 notificando formalmente su denegatoria de defensa y cubierta con fundamento en dichas exclusiones. *Véase*, Exhibit 2 y 3 de la *Moción de Sentencia Sumaria Parcial.*

Estos hechos surgen de la Demanda Enmendada y de los exhibits acompañados a la moción, y no fueron debidamente

controvertidos conforme exige la Regla 36.3 de Procedimiento Civil, *supra.*

Así delimitado el marco fáctico, resta aplicar el derecho sustantivo y determinar si procede desestimar la causa de acción en contra de Universal conforme a lo resuelto en *Viruet et al. v. SLG Casiano Reyes*, supra, sobre los efectos de la cláusula de exclusión de servicios profesionales incluida en una póliza de Responsabilidad General Comercial.

En nuestro ordenamiento jurídico, el contrato de seguro es de naturaleza contractual y se rige por lo pactado en la póliza. *López v. Atlantic Southern Ins. Co.*, supra, pág. 568. Debe interpretarse de forma integral, conforme a sus términos claros y específicos. *San Luis Center Apts. et al. v. Triple-Lopez*, supra, pág. 832. Si bien las cláusulas ambiguas se interpretan a favor del asegurado, cuando una exclusión está redactada en términos claros, no puede imponerse responsabilidad por riesgos expresamente exceptuados. *Viruet et al. v. SLG Casiano Reyes*, supra, pág. 279.

En *Viruet et al. v. SLG Casiano Reyes*, supra, el Tribunal Supremo resolvió que reclamaciones basadas en la omisión de supervisión y cuidado especializado en un centro de envejecientes constituían servicios profesionales excluidos bajo una póliza de Responsabilidad General Comercial. Allí se reiteró que las pólizas de responsabilidad comercial general no cubren reclamaciones derivadas de la prestación negligente de servicios profesionales, pues esos riesgos se atienden mediante seguros de responsabilidad profesional.

En el presente caso, las alegaciones de la Demanda Enmendada describen precisamente una supuesta omisión en el deber de atención, seguridad y supervisión de un residente con Alzheimer en un hogar de cuido. Conforme a la doctrina expuesta en *Viruet et al. v. SLG Casiano Reyes*, supra, tales funciones —en el

contexto de un hogar para personas de edad avanzada con condiciones mentales— implican necesariamente juicio, discernimiento y servicios especializados de cuido, lo que las sitúa dentro del ámbito de servicios profesionales según lo define el propio caso.

Más aún, la exclusión contenida en la forma CG 21 16 04 13 es amplia y expresa, y aplica aun cuando la reclamación alega negligencia en la supervisión o monitoreo. Asimismo, la exclusión por "Patient Injury" excluye lesiones sufridas por cualquier persona mientras sea paciente o se encuentre en los predios para recibir servicios de salud o cuido. Ambas disposiciones son claras y específicas, y no dejan margen para una interpretación razonable que extienda cubierta a los hechos alegados.

Contrario a lo resuelto por el TPI, la veracidad última de las alegaciones o la eventual determinación de responsabilidad no es determinante para efectos de cubierta. La obligación de defender y cubrir se analiza inicialmente a la luz de las alegaciones de la demanda y los términos de la póliza. Por consiguiente, no existe controversia real y sustancial sobre hechos materiales que impida la adjudicación sumaria. El TPI erró al concluir lo contrario y al no aplicar correctamente la Regla 36.3 de Procedimiento Civil, *supra*, ni la jurisprudencia interpretativa pertinente. En consecuencia, procede revocar la *Resolución* recurrida y dictar sentencia sumaria parcial a favor de Universal, desestimando la reclamación en su contra por ausencia de cubierta bajo la póliza en cuestión.

IV.

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* y **revocamos** el dictamen recurrido. En consecuencia, se desestima la *Demanda* en contra de Universal.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones